IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD A. BERUTTI and MURRAY-NOLAN BERUTTI LLC, on their own behalves and on behalf of all other members admitted to the Bar of the United States District Court for the District of New Jersey, including those admitted *pro hac vice*,<br><br>  Plaintiffs,<br><br>  v.<br><br>HONORABLE FREDA L. WOLFSON, U.S. Chief District Judge, District of New Jersey, in her judicial capacity, and WILLIAM T. WALSH, Clerk of the United States District Court for the District of New Jersey,<br><br>  Defendants. | No. 2:22-CV-04661<br><br>(Chief Judge Brann)* |

**MEMORANDUM OPINION**

**JANUARY 27, 2023**

Plaintiff Ronald A. Berutti, an attorney licensed in New Jersey, and Berutti's law firm, Murray-Nolan Berutti, LLC ("MNB") bring this action against the Honorable Freda L. Wolfson, Chief Judge of the United States District Court for the District of New Jersey and William T. Walsh, Clerk of the District Court for the District of New Jersey. He sues both Defendants in their official capacities.

---

\*   The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.

Berutti seeks a judgment declaring that procedures Chief Judge Wolfson adopted in response to the COVID-19 pandemic are illegal and void. The procedures, enacted through standing orders, required attorneys show proof of a COVID vaccination or a negative COVID test result to enter court facilities. Berutti had an in-person hearing scheduled in court but was denied entry when he failed to show proof of vaccination or a negative test result. Based on those facts, he brings this action on his behalf, his firm's behalf, and on behalf of all members admitted to practice in the District of New Jersey.

Berutti moves to recuse me from hearing this matter. As explained below, I conclude that no reasonable person would question my impartiality based on my prior decisions. Accordingly, Berutti's motion will be denied. Additionally, Defendants move to dismiss this action for both lack of jurisdiction and Berutti's failure to state a claim. For the following reasons, the Court lacks jurisdiction over this action; Berutti fails to assert a valid legal basis to invoke the Court's jurisdiction. He also fails to identify a harm he suffered as a result of Chief Judge Wolfson's orders. Therefore, he lacks standing. Accordingly, Defendants' motion will be granted and Berutti's complaint dismissed.

I.   BACKGROUND

   A.   Underlying Facts

In June 2022, Berutti was scheduled to appear before the Honorable Peter G. Sheridan, a district judge in the District of New Jersey, in *Falcone v. Dickstein*, a

civil action in which Berutti represented the plaintiff.[1] At the time, Chief Judge Wolfson had issued Standing Orders 2021-08 and 2022-1, which set the safety protocols the court would observe in light of the COVID-19 pandemic.[2] Standing Order 2021-8 required attorneys, among others, to show proof of vaccination or proof of a negative PCR test to enter court facilities.[3] It also required those choosing the testing option to get a test no more than seventy-two hours before seeking entry and did not permit rapid tests.[4] Standing Order 2022-01 updated that policy to permit rapid tests.[5]

Berutti, unaware of Standing Order 2021-8, arrived at the Clarkson S. Fisher Building and United States Courthouse in Trenton, New Jersey.[6] He was not vaccinated and did not have a negative test result.[7] Court staff denied him entry and instructed him to wait in his car.[8] Judge Sheridan called him over the phone and asked if he objected to arguing over the phone while the judge and Berutti's adversaries were in the courtroom.[9] Berutti did object.[10] The argument was then

---

[1] First Amended Complaint ("FAC"), Doc. 6 ¶¶ 13, 19; 2022 WL 4082138 (D.N.J. Sept. 6, 2022), *appeal docketed*, No. 22-2701.
[2] *See* Standing Order 2021-08, Doc. 1-1.
[3] Standing Order 2021-08, Doc. 1-1.
[4] *Id.*
[5] Standing Order 2022-01 (Mar. 16, 2022), *available at* https://www.njd.uscourts.gov/sites/njd/files/SO2022-01.pdf
[6] FAC, Doc. 6 ¶ 14-16.
[7] *Id.*
[8] *Id.* ¶ 18.
[9] *Id.* ¶ 19.
[10] *Id.* ¶ 20.

rescheduled to another date.[11] Another MNB attorney appeared at the rescheduled hearing because Berutti was unavailable on the rescheduled date.[12] Ultimately, Judge Sheridan dismissed the complaint in *Falcone* for lack of standing.[13] In August 2022, Chief Judge Wolfson issued Standing Order 2022-02, which rescinded the vaccine-or-test requirement.[14]

### B. Procedural History

Berutti then filed a one-count complaint against Defendants in the District of New Jersey, seeking a declaration that Standing Order 2021-8 violated several statutes and the Constitution of the United States.[15] The matter was assigned to the Honorable Susan D. Wigenton. Berutti then moved for a temporary restraining order ("TRO") and preliminary injunction voiding Standing Order 2021-08.[16] Judge Wigenton denied his motion.[17] After amending his complaint, Berutti again moved for a TRO and preliminary injunction.[18] Following the filing of the first amended complaint ("FAC"), the Honorable Michael A. Chagares, Chief Judge of the United

---

[11] Decl. of Ronald A. Berutti, Doc. 26-1 ¶¶ 1-5.
[12] *Id.* ¶ 5. Berutti does not explain why he was unavailable. *See id.*
[13] 2022 WL 4082138 at *2-3.
[14] Standing Order, 2022-02 (Aug. 23, 2022), *available at* https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2022-02COVIDProtocols.pdf.
[15] *See* FAC, Doc. 6 at ¶¶ 92-108 (Count I). Berutti also sought declarations that persons could not be coerced to take COVID-19 tests or be vaccinated, or be discriminated against for refusing the tests or the vaccine, as well as a declaration regarding the lack of evidence surrounding COVID vaccines. *See id.*
[16] First Mot. for TRO, Doc. 2.
[17] July 7, 2022 Letter Opinion, Doc. 3; July 7, 2022 Order Doc. 4.
[18] Doc. 7.

States Court of Appeals for the Third Circuit, reassigned the matter to this Court and designated me to preside over this action pursuant to 28 U.S.C. § 292.[19]

Following reassignment, Defendants moved to dismiss the FAC for lack of subject matter jurisdiction and for failing to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[20] Berutti then filed a motion for recusal.[21] All motions have been fully briefed and are ripe for disposition.

## II.   LAW

### A.   Motions to Recuse

Title 28 U.S.C. § 455 requires any federal judge to disqualify themselves in any proceeding in which their "impartiality might reasonably be questioned." The court's inquiry is "from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances."[22] The party seeking recusal carries the burden to establish facts from which a judge's impartiality might reasonably be questioned.[23]

### B.   Motions to Dismiss Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may attack a federal court's subject matter jurisdiction at any time.[24] The best practice is to consider a Rule 12(b)(1) motion

---

[19] Doc. 8.
[20] Mot. to Dismiss ("MTD"), Doc. 20.
[21] Mot. for Recusal, Doc. 21.
[22] *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010) (quoting *Cheney v. United States Dist. Court*, 541 U.S. 913, 924 (2004) (op. of Scalia, J.) (citation omitted)).
[23] *Denardo v. Municipality of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992) (citing *Idaho v. Freeman*, 478 F.Supp. 33, 35 (D. Idaho 1979)).
[24] *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008).

before any other issues as a successful Rule 12(b)(1) motion means that the court has no jurisdiction to hear the claim.[25] The burden is always on the party invoking federal jurisdiction.[26]

On such motions, it is important to distinguish between "factual" and "facial" attacks.[27] On a facial attack, the court takes all allegations in the plaintiff's complaint as true and determines whether it has subject matter jurisdiction over the action.[28] By contrast, a factual attack involves a challenge to the particular facts alleged in support of jurisdiction and allows the court to "weigh and 'consider evidence outside the pleadings.'"[29] But on either attack, a court may look to publicly available documents to determine whether it has jurisdiction.[30]

## III. ANALYSIS

### A. There Is No Basis for Recusal

Berutti moves for recusal under 28 U.S.C. § 455 and the Due Process Clause of the United States Constitution.[31] He believes that my previous decisions show that

---

[25] *Scanlin v. Soldiers & Sailors Mem'l Hosp.*, 2007 WL 141014, at *2 (M.D. Pa. Jan. 17, 2007) (McClure, J.).
[26] *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).
[27] *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).
[28] *Id.*
[29] *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).
[30] *See Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016).
[31] Recusal Br., Doc. 21-1 at 1. Berutti identifies the Fourteenth Amendment in his brief. *See id.* The Court interprets him to mean the Fifth Amendment, which also contains a Due Process Clause because it is settled law that "the Fourteenth Amendment only applies to actions of the states and not to the federal government." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

6

I have "already pre-determined many of the issues" in this matter and therefore recusal is warranted.[32]

The Supreme Court of the United States addressed recusal for personal bias at length in *Liteky v. United States*.[33] The Court explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[34] Only in the rarest circumstances will rulings evidence "the degree of favoritism or antagonism required when no extrajudicial source is involved."[35] Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[36]

Berutti argues that three of my prior decisions evince an improper—and potentially unconstitutional—bias against his position. He first cites *United States v. Singh*.[37] There, a vaccinated federal inmate sought compassionate release from

---

[32] Recusal Br., Doc. 21-1 at 6.
[33] 510 U.S. 540 (1994),
[34] *Id.* at 555.
[35] *Id.*; *see also Arrowpoint Capital Corp. v. Arrowpoint Asset Mgt., LLC*, 793 F.3d 313, 330 (3d Cir. 2015) ("Further, adverse rulings—even if they are erroneous—are not in themselves proof of prejudice or bias.").
[36] *Liteky*, 510 U.S. at 555. The Court offered an example of one such statement made by a district judge who presided over an espionage prosecution of two German Americans. The judge said: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.'" *Id.* (quoting *Berger v. United States*, 255 U.S. 22, 41 (1921)).
[37] Recusal Br., Doc. 21-1 at 2 (citing 525 F. Supp. 3d 543 (M.D. Pa. 2021)).

7

prison under 18 U.S.C. § 3582(c)(1)(A) due to his susceptibility to COVID-19.[38] I concluded that the inmate's vaccination status mitigated his risk of suffering the more serious consequences of contracting COVID-19, citing guidance from the United States Centers for Disease Control and Prevention ("CDC").[39] I left open the possibility that "future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection."[40]

Berutti next cites to *Braxton v. Spaulding*,[41] in which another inmate sought habeas relief on the same grounds the inmate in *Singh* relied upon: his susceptibility to serious consequences from contracting COVID.[42] I concluded that the inmate failed to exhaust his administrative remedies, noting that the inmate had twice refused the COVID vaccine.[43] I explained that the inmate's refusal to get vaccinated did not excuse his failure to exhaust his administrative remedies or render those remedies inadequate, citing to *Singh* for evidence on the effectiveness of the vaccines.[44]

---

[38] *Singh*, 525 F. Supp 3d. at 545.
[39] *Id.* at 547-48.
[40] *Id.* at 549.
[41] Recusal Br., Doc. 21-1 at 3-4 (citing 2021 WL 1516377, (M.D. Pa. Apr. 16, 2021), *aff'd sub nom. Braxton v. Warden Lewisburg USP*, 2022 WL 17176479 (3d Cir. Nov. 23, 2022)).
[42] 2021 WL 1516377, at *1.
[43] *Id.* at *3.
[44] *Id.* (citing 525 F. Supp. 3d at 547-48).

Lastly, Berutti cites to *Finkbeiner v. Geisinger Clinic*.[45] A proposed class of healthcare workers claimed that their employer's vaccinate-or-test requirement cost them their jobs, violating state and federal laws against religious discrimination in employment, as well as the Due Process Clause.[46] I dismissed the religious discrimination claim because the plaintiff's beliefs about the vaccine were medical, not religious.[47] I dismissed the due process claim because the employer-defendant was not a state actor.[48] The plaintiffs also alleged that their termination constituted intentional or negligence infliction of emotional distress.[49] I dismissed those claims because the plaintiff failed to adequately allege that her employer engaged in extreme conduct or breached a duty it owed her.[50]

In rejecting all of the *Finkbeiner* plaintiff's claims, I noted that each "begins from the same premise: COVID-19 vaccines and tests are unsafe and ineffective."[51] I noted that the plaintiff's evidence was severely deficient, consisting of "nothing more than a collection of distorted statements and anti-vaccine hocus-pocus."[52] I

---

[45] Recusal Br., Doc. 21-1 at 4 (citing *Finkbeiner v. Geisinger Clinic*, ___ F. Supp. 3d ___, 2022 WL 3702004, at *1 (M.D. Pa. Aug. 26, 2022)).
[46] *Finkbeiner*, 2022 WL 3702004, at *3-5.
[47] *Id.* at *4.
[48] *Id.* at *4-6.
[49] *Id.* at *6-7.
[50] *Id.* at *7.
[51] *Id.* at *1.
[52] *Id.*

noted that the plaintiff's complaint "makes plain that she's after a modern-day *Scopes* trial."[53]

Berutti has not identified an extrajudicial source for my potential bias, but to the extent he believes that I have a personal bias against his views on COVID vaccines based on my decisions, I disagree. The statements he cites are reflections of the quality of the evidence presented in those cases. At most, they are "ominous signals" of my temperament towards baseless claims that vaccines are not effective.[54] "But neither lawyers nor litigants are entitled to *tabula rasa* judges."[55]

In any event, I do not find my prior opinions evident of bias. Nothing in them indicates general antagonism to individuals who disagree with vaccine mandates or refuse to get vaccinated. If anything, *Singh*, *Braxton*, and *Finkbeiner* give Berutti a premier of the evidence necessary to sustain the serious claims that both he and the past litigants brought. Serious claims often require compelling evidence. Berutti's request for a nationwide injunction is no different. The litigants in *Singh*, *Braxton*,

---

[53] *Id.* at *7. The *Scopes* trial, formally *Tennessee v. John Thomas Scopes*, was a trial in which a Tennessee schoolteacher was charged with violating a state law that prohibited public schoolteachers from teaching evolution. *See generally* EDWARD J. LARSON, SUMMER FOR THE GODS: THE SCOPES TRIAL AND AMERICA'S CONTINUING DEBATE OVER SCIENCE AND RELIGION (Basic Books 2020). The *Scopes* trial was largely a stunt to create publicity on the debate over teaching creationism in public schools, with the defendant even admitting that he violated of the statute to invite prosecution even though he was not certain he taught evolution. *See id.* at 211-14 (explaining that the trial began "as a publicity stunt" and received significant press coverage).
[54] *Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 145 (1st Cir. 2005), *as revised* (Mar. 24, 2005).
[55] *Id.*

10

and *Finkbeiner* failed to provide that evidence, resulting in the dismissal of their claims.

In addition, none of the decisions Berutti cites turn on the effectiveness of COVID testing or vaccines, which is the precise issue that concerns him.[56] Neither does this one, as will be explained below. At most, the effectiveness of vaccines, or lack thereof, was one factor in deciding whether the inmates in *Singh* and *Braxton* demonstrated the exceptional circumstances necessary to warrant compassionate release or habeas relief. Far more important in each case was the high burden of proof each plaintiff carried.

Similarly, the effectiveness of COVID vaccines or tests played almost no role in *Finkbeiner*, which was decided on the legal sufficiency of the plaintiff's religious beliefs, the state-actor requirement, and tort pleading standards. If the effectiveness of vaccines becomes an issue in this matter, the Court welcomes Berutti's views to the extent that he supports them with evidence.[57] But his "displeasure with [past] legal rulings does not form an adequate basis for recusal."[58]

---

[56] *See* Recusal Br., Doc. 21-1 at 6-7.
[57] Berutti takes umbrage at my reference to the *Scopes* trial in *Finkbeiner*. There, the plaintiff sought to use cherrypicked statements from various sources to argue that COVID tests were unsafe. By contrast, Berutti's complaint is accompanied by affidavits from a physician and pharmacologist in support of his allegations. *See* Decl. of Dominc M. Pedulla, M.D., Doc. 1-2; Decl. of Michael Babich, Ph.D., Doc. 1-3. Although the Court concludes that Berutti lacks standing to pursue his claims and does not reach the merits of those claims, it notes that he supports his claims with scientific evidence, unlike the *Finkbeiner* plaintiffs.
[58] *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278 (3d Cir. 2000).

B.   **The Court Lacks Subject Matter Jurisdiction**

Defendants argue that the Court lacks subject matter jurisdiction over Berutti's claims because (1) the statutes Berutti cites to as the basis for this action do not authorize him to bring suit and (2) Berutti lacks standing to bring his claims. As the party invoking federal jurisdiction, Berutti carries the burden of establishing that the court has jurisdiction over his claim.[59]

1.   **Berutti Has No Legal Basis for Jurisdiction Under Either 28 U.S.C. § 1331 or § 1343**

Berutti claims federal jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[60] Section 1331 grants district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." It is commonly known as federal question jurisdiction. Defendants argue that neither of Berutti's purported legal bases for his claims authorize him to bring this action, depriving the Court of federal question jurisdiction.

Berutti cites to the Declaratory Judgment Act, 28 U.S.C. § 2201, as the legal basis for his claims that Defendants Actions violated section 360bbb of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*[61] Defendants

---

[59]   *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 162 (3d Cir. 2017) (citing *Spokeo v. Robbins*, 578 U.S. 330, 338 (2016)).
[60]   *Id.* at 17.
[61]   *See id.* at 16.

12

respond that neither statute authorizes Berutti, a private plaintiff, to bring this action.[62] The Court agrees with Defendants.

A federal court does not have federal question jurisdiction over a case where a private plaintiff's basis for his claims are statutes that do not authorize private rights of action.[63] "It is well settled that 'the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right.'"[64] Therefore, Berutti is left relying on section 360bbb of the FDCA. But it is equally well settled "that the FDCA creates no private right of action."[65] Section 337 of the FDCA dictates that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."[66] Therefore, Berutti cannot rely on either statute to invoke the Court's federal question jurisdiction.

Section 1343 grants district courts original jurisdiction over particular civil rights actions. Section 1343(a)(1) and (a)(2) grant jurisdiction over actions brought pursuant to 42 U.S.C. § 1985. Section 1342(a)(3) grants jurisdiction over actions to

---

[62] MTD Br., Doc. 20-1 at 20-21 (quoting *In re Orthop. Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999)) (citing 21 U.S.C. § 337); Reply Br., Doc. 27 at 8 (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

[63] *See, e.g., Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 83 (1st Cir. 2004) (citing *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924-25 (5th Cir. 1997); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 539 (7th Cir. 1993); *Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, 36-37 (1st Cir. 2003)).

[64] *Schilling*, 363 U.S. at 677.

[65] *In re Bone Screw Litig.*, 193 F.3d at 788.

[66] The statute allows individual states to enforce some of its provisions, but that is not relevant here.

13

redress violations of any law "providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Lastly, section 1343(a)(4) grants jurisdiction over actions "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

Berutti does not bring this action pursuant to 42 U.S.C. § 1985. Claims under the other two subsections still require an independent cause of action because section 1343 is only a jurisdictional statute.[67] Although Berutti cites to both constitutional and pre-constitutional legal principles in support of his claims, none authorize him to bring an action for the alleged deprivation of his constitutional rights.[68] Accordingly, dismissal for lack of jurisdiction is appropriate.

### 2. Berutti Lacks Standing Because He Has Not Alleged An Injury

Defendants also attack Berutti's standing to bring the instant claims. Plaintiffs in federal court must have standing to invoke the limited jurisdiction of an Article III court.[69] A plaintiff with standing must plausibly allege: (1) an injury in fact, (2)

---

[67] *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615 (1979). Section 1343(a)(3) is understood to be the jurisdictional counterpart to 42 U.S.C. § 1983, which is a common vehicle for deprivations of constitutional rights. *See id.*

[68] *See* 42 U.S.C. § 1983 (authorizing private parties to sue for violations of their constitutional rights).

[69] *Cottrell v. Alcon Labs.*, 874 F.3d 154, 161-62 (3d Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

14

that is fairly traceable to the defendants' conduct, (3) that is likely to be redressed by a favorable judicial determination.[70]

"In assessing whether a plaintiff has carried this burden, [courts must] separate [the] standing inquiry from any assessment of the merits of the plaintiff's claim."[71] "To maintain this fundamental separation between standing and merits at the dismissal stage, [courts] assume for the purposes of [the] standing inquiry that a plaintiff has stated valid legal claims."[72] "While the standing inquiry may necessarily reference the nature and source of the claims asserted, the focus remains on whether the plaintiff is the proper party to bring those claims."[73]

### a.     The Injury-In-Fact Requirement

Defendants contend that Berutti fails to identify an injury he or his client suffered when he was confronted at the entrance of the courthouse or when Judge Sheridan rescheduled oral argument in *Falcone*.[74] Berutti responds that his injury is both being prevented from appearing at oral argument in person, as originally scheduled, and missing the rescheduled argument due to a scheduling conflict.[75] But Berutti fails to allege any harm that has befallen him as a result of his alleged injury. Therefore, the Court agrees with Defendants that Berutti lacks standing.

---

[70] *Id.* at 162 (quoting *Spokeo*, 578 U.S. at 337).
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] MTD Br., Doc. 20-1 at 18-19.
[75] Berutti Opp. Br., Doc. 26 at 21-22.

15

"To allege injury in fact sufficiently, a plaintiff must claim 'that he or she suffered an invasion of a legally protected interest that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[76] In *Cottrell v. Alcon Laboratories*, the Third Circuit discussed the injury-in-fact element at length with particular focus on the type of the "legally protected interest" necessary to support standing.[77] Importantly, our Court of Appeals noted that although the term "legally protected interest" invokes the notion of assessing the legal basis for a plaintiff's claim (i.e., the statutory, common law, or constitutional basis for the claim), whether the plaintiff has alleged an invasion of their legally protected interest does not turn on whether the defendant's conduct violated a statute, the common law, or the Constitution.[78]

As for the injury itself, it must be both concrete and particularized. A concrete injury is "real" rather than "abstract."[79] "Bare procedural or technical violations of a statute alone will not satisfy the concreteness requirement."[80] A particularized injury "must affect the plaintiff in a personal and individual way"; it cannot be a common grievance shared by all.[81] Finally the injury must be "'actual or imminent' rather

---

[76] *Cottrell*, 874 F.3d at 162-63 (quoting *Spokeo*, 578 U.S. at 339).
[77] *See id.* at 162-65.
[78] *Id.* at 164.
[79] *Id.* at 167.
[80] *Id.* (citing *Spokeo*, 578 U.S. at 340-41).
[81] *Id.* (quoting *Spokeo*, 578 U.S. at 340).

than merely 'conjectural or hypothetical.'"[82] The Court now turns to Berutti's alleged injury.

### b. Berutti Fails to Allege He Suffered Harm by Being Denied Entry to the Courthouse or by Being Forced to Reschedule

Defendants contend that Berutti was not injured because Standing Order 2021-08 left him with a choice between getting vaccinated or taking a COVID-19 test.[83] Berutti responds that both options involved procedures that were approved through the United States Food and Drug Administration's Emergency Use Authorization ("EUA") authority, and under the FDCA, no person can be compelled to undergo a EUA procedure.[84] Although the Court has already concluded that Berutti has no legal basis for such a claim based on the statutes Berutti cites to, it presumes his legal claims valid for the purposes of the standing analysis.

Therefore, Berutti would have standing *if he suffered an injury* because he refused to choose between two allegedly illegal options. But that is precisely where his argument fails. An injury requires the injured party to have suffered some harm. Berutti fails to identify any harm he suffered.

First, Berutti fails to allege any harm from being denied entry or being forced to reschedule oral argument in *Falcone*.[85] The FAC does not claim Berutti suffered

---

[82] *Id.* (quoting *Spokeo*, 578 U.S. at 340).
[83] MTD Br., Doc. 20-1 at 19-20.
[84] *See* FAC, Doc. 1 ¶ 2 (citing 21 U.S.C. § 360bbb-3).
[85] To be sure, Berutti claims that he has a right to appear in court in person under both the First Amendment, the Fifth Amendment, and legal principles that predate the Constitution. *See*

17

any sort of physical, economic, or even reputational harm from being denied entry to the courthouse and prevented from arguing in person.[86] He does not allege, for example, that being denied entry caused him to lose business or suffer embarrassment. Nor does he allege that he lost business or revenue from being forced to reschedule the oral argument.[87]

Second, Berutti fails to allege that his client in *Falcone* suffered any harm from the challenged actions. It appears that Berutti, as lead counsel in *Falcone*, preferred to appear on his client's behalf before Judge Sheridan. But he does not allege that the outcome of *Falcone* would be any different had he argued the case instead of his law partner.[88] He does not allege his partner's representation was inadequate. Nor does he allege his client was harmed because the client was denied counsel of choice.[89] Without a harm, Berutti has no injury. Without an injury, he has

---

Berutti Opp. Br., Doc. 26 at 32-33. Whether those principles confer on him that right is a debatable question. But that question is largely irrelevant to Defendants' Rule 12(b)(1) motion. *See Cottrell*, 874 F.3d at 164. What is relevant is Berutti's failure to allege that he suffered an individual harm from not being allowed to appear in person on the scheduled day.

[86] *See id.* at 167 (explaining that financial harm is the paradigmatic form of harm sufficient for standing purposes).

[87] It is also unclear how he would meet the fairly-traceable element of the standing analysis with that injury. Beyond explaining how rescheduling actually harmed him, Berutti would need facts connecting whatever caused his scheduling conflict to Defendants. Such a connection is hard to imagine.

[88] *Falcone* was also dismissed for lack of standing. 2022 WL 4082138, at *2-3. But there, the court found that the plaintiff's injuries were not traceable to the defendant rather than finding that the plaintiff failed to allege a harm. *Id.*

[89] *See Wounded Knee Leg. Def./Offense Comm. v. FBI*, 507 F.2d 1281, 1284 (8th Cir. 1974) (explaining that an attorney has standing "to challenge any act which interferes with his professional obligation to his client and thereby, through the lawyer, invades the client's constitutional right to counsel").

no standing. Without standing, the Court does not have jurisdiction over his claims. Dismissal is accordingly appropriate.

## IV. CONCLUSION

Berutti fails to produce evidence from which a reasonable person would question my impartiality as the judge presiding over this action. He may dislike the outcome in prior cases, but he is welcome to persuade me to rule differently on the merits and his motion is accordingly denied.

This case did not reach the merits, however. Berutti has no legal basis for his claims and lacks standing, which prevents the Court from asserting jurisdiction over his claims. Therefore, the Court must dismiss this action for lack of subject matter jurisdiction. Accordingly, Berutti's motion for a preliminary injunction is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
Middle District of Pennsylvania
(sitting by designation)