PHILIP R. SELLINGER
United States Attorney
JOHN F. BASIAK JR.
JOHN T. STINSON
Assistant United States Attorneys
402 East State Street, 4th Floor
Trenton, NJ 08608
*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD A. BERUTTI, *et al.*,<br><br>        *Plaintiffs,*<br><br>    v.<br><br>HONORABLE RENÈE M. BUMB, Chief United States District Judge, in her judicial capacity, MELISSA RHOADS, Acting Clerk of the United States District Court for the District of New Jersey, in her official capacity,<br><br>        *Defendants.* | Hon. Matthew W. Brann, C.U.S.D.J. (presiding by designation)<br><br>Civil Action No. 22-cv-4661<br><br>**Return Date: June 5, 2023 by Order of the Court (ECF No. 35)** |

## FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF A MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

On the Brief:

John F. Basiak Jr.
John T. Stinson
Assistant United States Attorneys

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

A.   Background: Mr. Berutti's June 6, 2022 Incident ........................................ 2

B.   Chief Judge Wolfson's Narrowly Tailored Standing Orders ...................... 6

C.   Chief Judge Wolfson Rescinds the Vaccination-or-Testing Requirement ........... 9

D.   The Court's Inherent Power to Issue Standing Orders ............................. 11

E.   The Court Denies Plaintiffs' *Ex Parte* TRO .......................................... 12

F.   Plaintiffs' First Amended Complaint is Rendered Moot ......................... 13

G.   The Court Dismisses Plaintiffs' First Amended Complaint .................... 14

H.   Plaintiffs' Second Amended Complaint ................................................... 15

STANDARD OF REVIEW ...................................................................................... 16

A.   Rule 12(b)(1) ............................................................................................ 16

B.   Rule 12(b)(6) ............................................................................................ 17

LEGAL ARGUMENT ............................................................................................. 18

I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION ...................... 18

a.   Plaintiffs' Case is Moot Because of Standing Order 2022-02 ................. 18

b.   Plaintiffs Lack Standing .......................................................................... 20

c.   The Court Lacks Jurisdiction Over Plaintiffs' Claim for "Statute and
      Regulatory Violations" ............................................................................ 23

II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
        GRANTED ................................................................................................. 25

a.   Plaintiffs Do Not State a First Amendment Claim .................................. 26

b.   Plaintiffs Do Not State a Fifth Amendment Claim .................................. 28

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 17

*Berutti v. Wolfson*, No. 22-cv-4661,
    2023 U.S. Dist. LEXIS 14131 (D.N.J. Jan. 27, 2023) .................................... *passim*

*Campeau v. SSA*, 575 Fed. Appx. 35 (3d Cir. 2014) .................................................... 23

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ...................................................... 15

*Casey v. Parker*, No. 20-cv-525,
    2020 U.S. Dist. LEXIS 165665 (M.D. Tenn. Sept. 10, 2020) ................................. 28

*Children's Health Def., Inc. v. Rutgers, State Univ. of N.J.*, No. 21-15333,
    2022 U.S. Dist. LEXIS 171798 (D.N.J. Sept. 22, 2022) ......................................... 29

*Christopher v. Harbury*, 536 U.S. 403 (2002) ............................................................ 26

*City of Ocala v. Rojas*, No. 22-278,
    2023 U.S. LEXIS 1105 (Sup. Ct. Mar. 6, 2023) ...................................................... 21

*City Serv. Co. v. Gulf Oil Corp.*, 976 P.2d 545 (Ok. 1999) ......................................... 26

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008) .................................................... 16

*Cohen v. Kurtzman*, 45 F. Supp. 2d 423 (D.N.J. 1999) ............................................. 16

*Common Cause of Pa. v. Pa.*, 558 F.3d 249 (3d Cir. 2009) ........................................ 16

*Cty. of Butler v. Governor of Pa.*, 8 F.4th 226 (3d Cir. 2021) .................................... 19

*Dist. of Columbia v. Carter*, 409 U.S. 418 (1973) ..................................................... 15

*Donohue v. Hochul*, No. 21-cv-8463,
    2022 U.S. Dist. LEXIS 40138 (S.D.N.Y. Mar. 7, 2022) .......................................... 27

*Doughty v. U.S. Postal Serv.*, 359 F. Supp. 2d 361 (D.N.J. 2005) .............................. 16

*Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3d Cir.1985) ................................. 11, 29

*Edelstein v. Wilentz*, 812 F.2d 128 (3d Cir. 1987) ..................................................... 27

*Falcone v. Dickstein*, No. 22-cv-921,
    2022 U.S. Dist. LEXIS 160095 (D.N.J. Sept. 6, 2022) ......................................... 3, 5

*Finkbeiner v. Geisinger Clinic*, No. 21-cv-01903,
   2022 U.S. Dist. LEXIS 154512 (W.D. Pa. Aug. 26, 2022) ..................................... 21

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................................ 16

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*,
   832 F.3d 469 (3d Cir. 2016) .................................................................................... 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................ 20

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .................... 17

*In re Orthop. Bone Screw Prod. Liab. Litig.*, 193 F.3d 781 (3d Cir. 1999) ............... 24

*In re Peterson*, 253 U.S. 300 (1920) .......................................................................... 11

*In re Roberts*, 682 F.2d 105 (3d Cir. 1982) ................................................................ 27

*Jacobson v. Massachusetts*, 197 U.S. 12 (1905) ........................................................ 29

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir.1993) .......................................................... 17

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ................................................. 17

*Landair Transp., Inc. v. Del's Truck & Auto Repair*, Civil No. 1:17-CV-0723,
   2018 U.S. Dist. LEXIS 26519 (M.D. Pa. Feb. 20, 2018) ........................................ 17

*Lightfoot v. United States*, 564 F.3d 625 (3d Cir. 2009) ............................................ 16

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165 (S.D. Fla. 2021) ........ 24

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ..................................................... 17

*Maliandi v. Montclair State Univ.*, 845 F.3d 77 (3d Cir. 2016) ................................. 17

*Mazyck v. Wells Fargo Bank, N.A.*, No. 12-CV-3875,
   2013 U.S. Dist. LEXIS 193108 (N.D. Ga. Jan. 29, 2013) ...................................... 25

*McArthur v. Brabrand*, No. 1:21-cv-1435,
   2022 U.S. Dist. LEXIS 120266 (E.D. Va. July 7, 2022) .......................................... 7

*McArthur v. Brabrand*, No. 1:21-cv-1435,
   2022 U.S. Dist. LEXIS 120266 (E.D. Va. July 7, 2022) ........................................ 30

*McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009) ............................................ 26

*Monroe v. Beard*, 536 F.3d 198 (3d Cir. 2008) ........................................................... 26

*Murray-Nolan v. Rubin*, No. 22-801 (EP),
    2022 U.S. Dist. LEXIS 162043 (D.N.J. Sept. 8, 2022) ............................................... 3

*Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006) .................................................................................... 23

*Oberheim v. Bason*, 565 F. Supp. 3d 607 (M.D. Pa. 2021) ......................................... 23

*Patchak v. Zinke*, 138 S. Ct. 897 (2018) ...................................................................... 25

*Perez v. Turner*, No. 11-6833 (RBK/AMD),
    2013 U.S. Dist. LEXIS 88892 (D.N.J. June 25, 2013) .............................................. 17

*San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1 (1973) ................... 27

*Schumacher v. Nix*, 965 F.2d 1262 (3d Cir. 1992) ...................................................... 28

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005) .......................... 16

*Smith v. Biden*, No. 21-cv-19457,
    2021 U.S. Dist. LEXIS 215437 (D.N.J. Nov. 8, 2021) ............................................. 23

*Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95 (2d Cir. 2020) ........................ 25

*Tolchin v. Supreme Court*, 111 F.3d 1099 (3d Cir. 1997) ........................................... 27

*Troogstad v. Cty. of Chicago*, 576 F. Supp. 3d 578 (N.D. Ill. 2021) .......................... 30

*United States v. Barrow*, Crim. No. 20-127,
    2021 U.S. Dist. LEXIS 152420 (D.D.C. Aug. 13, 2021) ............................................ 7

*United States v. Howard*, 20-cr-53,
    2021 U.S. Dist. LEXIS 81995 (M.D.Pa. Apr. 29, 2021) ........................................... 12

*United States v. Kaetz*, No. 2:21-cr-71,
    2021 U.S. Dist. LEXIS 65591 (D.N.J. Apr. 5, 2021) ......................................... 12, 30

*United States v. Lev*, Mag. No. 17-3195,
    2020 U.S. Dist. LEXIS 90534 (D.N.J. May 22, 2020) ............................................. 12

*Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ................................................................................................... 20

*Vanderklok v. United States*, 868 F.3d 189, 205 n.6 (3d Cir. 2015) .......................... 18

**Statutes**

15 U.S.C. § 634 ............................................................................................. 24

21 U.S.C. § 337 ............................................................................................. 24

21 U.S.C. § 360bbb ....................................................................................... 24

28 U.S.C. § 1346 ........................................................................................... 24

28 U.S.C. § 2680 ........................................................................................... 24

28 U.S.C. § 292 ............................................................................................. 14

42 U.S.C. § 1983 ........................................................................................... 15

**Other Authorities**

Presidential Document, 88 Fed. Reg. 9385 (Feb. 14, 2023) ............................ 1, 10, 20

Federalist (Hamilton) .................................................................................... 24

U.S. Const. art. III, § 2 ................................................................................. 18

**Regulations**

45 C.F.R. § 46.116 ....................................................................................... 24

## PRELIMINARY STATEMENT

This is Plaintiff Ronald Berutti's third attempt to challenge the COVID-19 vaccination-or-testing requirement to enter courthouses in the District of New Jersey, which former Chief Judge Wolfson rescinded on August 23, 2022. The Honorable Susan D. Wigenton, U.S.D.J., initially denied Plaintiffs' request for a temporary restraining order and preliminary injunction, and this Court recently dismissed Plaintiffs' first amended complaint because Mr. Berutti "had no legal basis" for jurisdiction under any statute and did not suffer any injury-in-fact to establish standing. According to the Court, Mr. Berutti did not have "any sort of physical, economic, or even reputational harm" and did not "lose business or suffer embarrassment." Plaintiffs' latest complaint suffers from these same jurisdictional defects, and the Court should again dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

Plaintiffs' complaint is also moot. Former Chief Judge Wolfson's rescinding of the vaccination-or-testing requirement on August 23, 2022 means there is no longer a case or controversy before this Court. Furthermore, Plaintiffs cannot overcome mootness by speculating that the Court may subject Mr. Berutti to a vaccination-or-testing requirement in the future. Indeed, the President "anticipate[s] terminating the national emergency concerning the COVID-19 pandemic on May 11, 2023." 88 Fed. Reg. 9385, 9385 (Feb. 14, 2023).

Additionally, Plaintiffs do not state a plausible claim under the First Amendment for a "right of audience." Plaintiffs do not cite any precedent establishing a "right of audience" in this context, and this alleged right would not give Mr. Berutti

unqualified in-person access to the federal courts or the authority to ignore Chief Judge Wolfson's vaccination-or-testing requirement. As reflected in this Court's Local Civil Rules, there are numerous limitations on attorneys' ability to practice in person before the Court—such as Local Civil Rule 78.1 (oral arguments) and Local Civil Rule 101.1 (attorney admission)—and none of these rules violate an attorney's alleged "right of audience."

Lastly, Plaintiffs do not state an equal protection claim under the Fifth Amendment. The vaccination-or-testing requirement is subject to rational basis review because it does not implicate a fundamental right or create suspect classifications. And the vaccination-or-testing requirement satisfies rational basis review because Chief Judge Wolfson imposed the requirement as part of a multifaceted effort to protect the "public health and safety" of Court personnel and visitors through "reasonable and prudent actions" while remaining committed to the Court's mission of rendering "sound administration of equal justice under law."[1] Thus, the Court should dismiss Plaintiffs' second amended complaint with prejudice.

## STATEMENT OF FACTS

### A. Background: Mr. Berutti's June 6, 2022 Incident

Plaintiffs Ronald Berutti and his law firm, Murray-Nolan Berutti LLC, consist of four local-area attorneys handling commercial litigation, insurance defense, and

---

[1] *See, e.g.*, Standing Order 20-02, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2.pdf. The Court's relevant standing orders are available at https://www.njd.uscourts.gov/standing-orders (last visited Apr. 6, 2023).

family law.[2] They also market themselves as "a national leader" in "vaccine mandate challenges, medical exemptions, masking, critical race theory in schools, Second Amendment rights, economic liberty, [and] election law . . . ."[3]

Plaintiffs' allegations against former Chief Judge Wolfson and former Clerk of the Court, William T. Walsh (collectively, the "Federal Defendants"),[4] stem from a June 6, 2022 incident in which courthouse security allegedly "barred" Mr. Berutti from entering the Trenton federal courthouse for an oral argument in *Falcone v. Dickstein*, No. 22-cv-921, 2022 U.S. Dist. LEXIS 160095 (D.N.J. Sept. 6, 2022), *appeal filed*, No. 22-2701 (Sep. 15, 2022). *See* SAC ¶¶ 17-22, ECF No. 30. *Falcone* was a challenge brought by Mr. Berutti to a local board of education's COVID-19 masking policies. *See* 2022 U.S. Dist. LEXIS 160095, at *2-3.

At the time of Mr. Berutti's alleged "barring" at the Trenton courthouse, Standing Orders 2021-08 and 2022-01 were in effect. Under these standing orders, Chief Judge Wolfson required most courthouse visitors to present proof of full

---

[2] *About the Firm*, https://murray-nolanberutti.com/ (last visited Apr. 6, 2023); *see, e.g.*, *Murray-Nolan v. Rubin*, No. 22-801 (EP), 2022 U.S. Dist. LEXIS 162043 (D.N.J. Sept. 8, 2022) (asserting anti-masking civil rights claims).

[3] *See id.*; *see also* https://murray-nolanberutti.com/constitutional-law-liberty-and-civil-rights/ (Last visited Apr. 6, 2023)

[4] After a distinguished decades-long career serving the District of New Jersey, Chief Judge Wolfson retired from the Court and was succeeded in February 2023 by Chief Judge Bumb. Accordingly, on February 13, 2023, the Court substituted Chief Judge Wolfson for Chief Judge Bumb as an "official capacity" defendant under Rule 25(d). Likewise, on March 2, 2023, Chief Judge Bumb appointed Ms. Rhoads Acting Clerk, replacing William T. Walsh, who retired after a distinguished career as Clerk of the Court. *See In re Administrative Order Designating an Acting Clerk of the Court*, https://www.njd.uscourts.gov/sites/njd/files/AdminOrderDesignatingActingClerkofCourt.pdf (last visited Apr. 6, 2023). Accordingly, Ms. Rhoads is "automatically substituted" as an "official capacity" defendant for Mr. Walsh under Rule 25(d).

vaccination or a negative COVID-19 test as well as proof of identification.[5] While Plaintiffs allege that Mr. Berutti was "unaware" of these standing orders, SAC ¶ 20, the Court posted these orders on its website months before Mr. Berutti's arrival.[6]

When Mr. Berutti approached the security checkpoint at the courthouse, he refused to provide any information to satisfy the vaccination-or-testing requirement and "gave no reason for not producing" it. *See* SAC ¶ 18. As a result, Mr. Berutti alleges that courthouse security "confronted" him, prevented him from entering the courthouse, and told him that he should "wait in his automobile" for a call from the district judge presiding over the *Falcone* case. *See id.* ¶¶ 18, 22.

When Mr. Berutti returned to his automobile, he received a call from the judge while his "two adversaries were in the courtroom." *Id.* ¶ 23. During the call, Mr. Berutti allegedly "objected on grounds that the [standing orders] violated his constitutional and statutory rights," as well as his purported regulatory right to "informed consent" concerning vaccination. *See id.* ¶¶ 4-5, 24, 43-44. Nevertheless, Mr. Berutti suggests that he resolved the issue over his "barring" from the courthouse that day without any prejudice to his clients. *See* Pls.' Br. at 5 n.3, ECF No. 26. "Ultimately, a telephonic oral argument was held on another day" and his law partner appeared for the argument because Mr. Berutti had a "scheduling conflict." *See id.* Mr. Berutti "does not allege his partner's representation was inadequate." *Berutti v. Wolfson*, No. 22-cv-4661, 2023 U.S. Dist. LEXIS 14131, at *17 (D.N.J. Jan. 27, 2023).

---

[5] https://www.njd.uscourts.gov/sites/njd/files/SO2022-01.pdf.
[6] https://www.njd.uscourts.gov/sites/njd/files/SO2022-01.pdf.

"Nor does he allege his client was harmed because the client was denied counsel of choice." *Id.* The district judge presiding over Mr. Berutti's *Falcone* case "carefully reviewed" Mr. Berutti's submissions and considered the parties' oral arguments in eventually dismissing Mr. Berutti's *Falcone* case for lack of standing. *See* 2022 U.S. Dist. LEXIS 160095, at *2-3, 7; *see also Berutti*, 2023 U.S. Dist. LEXIS 14131, at *17 n.88.

Plaintiffs also do not identify any other client that suffered prejudice because of Chief Judge Wolfson's standing orders, and Plaintiffs clarified in a prior submission to this Court "that 'no harm' befell Mr. Berutti's client" in the *Falcone* case." *See* Pls.' Br. at 22-24, ECF No. 26. According to Plaintiffs, "[t]he injury which is the subject of the Amended Complaint is that which occurred to Mr. Berutti and MNB, not their client. . . ." *Id.*

Moreover, as the Court noted in its prior decision, Plaintiffs do not allege "any sort of physical, economic, or even reputational harm from being denied entry to the courthouse . . . ." *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *17; *see also* SAC ¶¶ 17-23. "He does not allege, for example, that being denied entry caused him to lose business or suffer embarrassment." *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *17. "Nor does he allege that he lost business or revenue from being forced to reschedule the oral argument." *Id.* On the contrary, Mr. Berutti is promoting his

alleged "barring" at the Trenton courthouse on state-wide talk radio, along with other pandemic-related litigation that he is pursuing through his law firm.[7]

### B. Chief Judge Wolfson's Narrowly Tailored Standing Orders

The vaccination-or testing requirement set forth in Standing Orders 2021-08 and 2022-01 was part of a multifaceted effort by Chief Judge Wolfson to protect the "public health and safety" of Court personnel and visitors from the COVID-19 pandemic through "reasonable and prudent actions" while remaining committed to the Court's mission of rendering "sound administration of equal justice under law."[8] Chief Judge Wolfson achieved this balance by issuing a series of standing orders based on the latest guidance from scientific experts and narrowly tailoring the orders to conditions in the District of New Jersey.

Chief Judge Wolfson imposed a vaccine-or-testing requirement through Standing Order 2022-01 "in response to the continuing COVID-19 pandemic" in September 2021 and the "National Emergency and the New Jersey State of Emergency"[9] This vaccination-or-testing requirement was not wholly unique to the District of New Jersey at the time. Other courts throughout the nation had issued standing orders regarding vaccination and testing. For example, the Chief Judge of the Middle District of Pennsylvania issued Standing Order 2021-10 in June 2021

---

[7] *In the News*, https://murray-nolanberutti.com/audio-of-ron-berutti-on-101-5-with-bill-spadea-on-july-28-2022/ (last visited Mar. 31, 2023).

[8] *See, e.g.*, Standing Order 20-02, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2.pdf.

[9] https://www.njd.uscourts.gov/sites/njd/files/SO2022-01.pdf.

requiring masks "for individuals who are not fully vaccinated."[10] The Eastern District of Virginia also adopted a vaccination-or-testing requirement for courthouse entry. *See McArthur v. Brabrand*, 610 F. Supp. 3d 822, 835 n.7 (E.D. Va. July 7, 2022) (noting that the Eastern District of Virginia "has, at times, required unvaccinated individuals to wear a mask when in the courthouse, while permitting vaccinated individuals to be in the courthouse without masks" and employees and contractors of the court "must either be vaccinated against the COVID-19 virus, or alternatively: (1) be tested for COVID-19 twice a week; and (2) wear a mask while indoors in our Courthouses and Court facilities."); *see also United States v. Barrow*, Crim. No. 20-127, 2021 U.S. Dist. LEXIS 152420, at *6 n.14 (D.D.C. Aug. 13, 2021) (discussing standing orders).

Chief Judge Wolfson's standing orders relied in part on guidance from federal and state health officials and the Centers for Disease Control and Prevention ("CDC").[11] This guidance from health officials included promoting the use of vaccines, social distancing, testing, masking, and anti-viral treatments.[12] Accordingly, during limited times, Chief Judge Wolfson's various standing orders have imposed the following in response to the COVID-19 pandemic:

---

[10] https://www.pamd.uscourts.gov/sites/pamd/files/general-ordes/2021-10.pdf (last visited Oct. 11, 2022).

[11] *See, e.g.*, Standing Order 2020-14, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2020-14.pdf.

[12] *See Summary of Guidance for Minimizing the Impact of COVID-19*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm#:~:text=CDC%20recomm ends%20a%20strategic%20approach,high%20risk%20for%20severe%20illness (last visited Oct. 11, 2022).

➤ Encouraged proceedings by telephone or videoconferencing where practicable and as permitted by law;[13]

➤ Extended civil discovery deadlines;[14]

➤ Authorized the use of electronic signatures where "obtaining an actual signature is impracticable or imprudent";[15]

➤ Tolled the Speedy Trial Act, *id.*;

➤ Limited or temporarily prohibited grand juries;[16]

➤ Required all persons "to wear a face covering or mask when in a community setting, including entering and exiting the courthouse";[17]

➤ Denied courthouse entry to "[p]ersons who have been diagnosed with COVID-19"[18] or have a temperature of 100.4 or higher";[19]

➤ Imposed limits on the number of simultaneous jury trials for each vicinage;[20] and

➤ Required full vaccination or a negative test result for all employees and later courthouse visitors who were not "excepted persons."[21]

These restrictions were comprehensive but also adaptable and tailored to the

unique circumstances of the District of New Jersey and the important mission of the

---

[13] Standing Order 2020-06, https://www.njd.uscourts.gov/sites/njd/files/SO2020-06%20.pdf.

[14] Standing Order 2020-04, https://www.njd.uscourts.gov/sites/njd/files/20-04.pdf.

[15] Standing Order 2020-07, https://www.njd.uscourts.gov/sites/njd/files/20-07.pdf.

[16] Standing Order 21-02, https://www.njd.uscourts.gov/sites/njd/files/SO21-02.pdf; Standing Order 2020-09, https://www.njd.uscourts.gov/sites/njd/files/2020-09.pdf.

[17] Standing Order 2020-13, https://www.njd.uscourts.gov/sites/njd/files/So2013.pdf.

[18] Standing Order 2020-14, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2020-14.pdf.

[19] Standing Order 2020-16, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2020-16Stamped.pdf.

[20] Standing Order 2021-04, https://www.njd.uscourts.gov/sites/njd/files/UpdatedAmendedSO2021-04Final.pdf.

[21] Standing Order 2021-08, https://www.njd.uscourts.gov/sites/njd/files/SO21-08COVID-19VisitorFed.DetaineeVacc.andTesting.pdf.

Court. The pandemic had come in "waves" and affected each state and judicial district differently and at different times.[22]

## C. Chief Judge Wolfson Rescinds the Vaccination-or-Testing Requirement

As the CDC and other public health officials modified their guidance based on improved scientific knowledge, former Chief Judge Wolfson incorporated that information into her standing orders.[23] In other words, Chief Judge Wolfson never adopted a permanent, one-size-fits-all approach. Instead, when conditions on the ground permitted, Chief Judge Wolfson reduced pandemic-related restrictions to courthouse access and movement.

For example, in Standing Order 2022-01, Chief Judge Wolfson ordered that "the wearing of face coverings or masks," while "encouraged," was "now optional, and is no longer required, of persons seeking entry to or occupying the public areas of Court facilities."[24] Chief Judge Wolfson relaxed these restrictions because New Jersey's "public health emergency . . . ended on March 7, 2022, at which time, the mask requirement inside schools was lifted by the Governor of New Jersey." *Id.* Chief Judge Wolfson also recognized that the CDC had "provided governments with . . . a new tool, 'COVID-19 Community Levels,'" to assess "COVID-19 transmissibility levels within each community." *Id.*

---

[22] *See* Standing Order 2020-17, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder20-17.pdf (imposing certain courthouse restrictions because of the "second wave" of the pandemic in New Jersey).

[23] *See, e.g.*, Standing Order 2020-14.

[24] https://www.njd.uscourts.gov/sites/njd/files/SO2022-01.pdf.

Likewise, on August 23, 2022, Chief Judge Wolfson further relaxed courthouse restrictions in Standing Order 2022-02.[25] This standing order was based in part on guidance issued by the CDC just two weeks prior. *Id.* at 3. Chief Judge Wolfson cited "changes in policy, effective August 22, 2022, under which agencies will cease COVID-19 testing aimed at unvaccinated employees, and will stop asking employees, visitors and contractors if they are vaccinated, prior to entering federal buildings." *Id.* at 4. Standing Order 2022-02 still required masking in courthouses located in areas of "high" community COVID-19 transmission, but Chief Judge Wolfson "rescinded" the vaccination-or-testing requirement from Standing Orders 2021-08 and 2022-01. *Id.* ¶¶ 1-2.

Standing Order 2022-02 is the most recent pandemic-related standing order, although the Court in January 2023 extended certain videoconference options in criminal proceedings addressed in Standing Order 2021-03.[26] As of April 6, 2023, the community status where all three District courthouses are located is "low" and mask wearing is optional.[27] The President anticipates "terminating the national emergency concerning the COVID-19 pandemic on May 11, 2023." 88 Fed. Reg. at 9385.

---

[25] https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2022-02COVIDProtocols.pdf.
[26] https://www.njd.uscourts.gov/sites/njd/files/CaresActS08thExt.pdf
[27] *COVID-19 Weekly Surveillance Reports*, https://www.nj.gov/health/cd/statistics/covid/#1 (last visited Apr. 10, 2023).

### D. The Court's Inherent Power to Issue Standing Orders

Chief Judge Wolfson issued her standing orders through the Court's inherent power. "Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties." *In re Peterson*, 253 U.S. 300, 312 (1920). The Third Circuit has described this inherent authority in a variety of contexts as "essential to the administration of justice and absolutely essential for the functioning of the judiciary." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 563 (3d Cir.1985) (en banc) (cleaned up). The inherent power is "rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *Id.* (cleaned up); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.").

While some commentators, including Plaintiffs, dislike in general the practice of using standing orders for internal court regulation,[28] the practice is commonplace throughout the country. For example, the Chief Judges of the Middle District of Pennsylvania have issued approximately 40 standing orders addressing the COVID-19 pandemic, including supplements and amendments.[29] Additionally, courts in this District have rejected specific challenges to Chief Judge Wolfson's pandemic-related

---

[28] *See* Fed. R. Civ. P. 83, Notes of Advisory Committee on Rules-1985 Amendment; *see also* SAC ¶¶ 39-47.

[29] *COVID-19 Orders*, https://www.pamd.uscourts.gov/covid-19-orders (last visited Apr. 1, 2023).

standing orders implicating the constitutional rights of the parties. *See United States v. Kaetz*, No. 2:21-cr-71, 2021 U.S. Dist. LEXIS 65591, at *5-6 (D.N.J. Apr. 5, 2021) (Ranjan, J., sitting by designation) ("The well-supported standing orders, predicated on findings pertaining to 'real time' public-health risks, properly tolled the speedy trial clock."); *United States v. Lev*, Mag. No. 17-3195, 2020 U.S. Dist. LEXIS 90534, at *8-9 (D.N.J. May 22, 2020) (Clark, M.J.) ("[N]one of those arguments convince this Court either that the District Court was without authority to issue the Standing Orders or that application of the Standing Orders here is somehow fundamentally unfair or improper."). Other courts in the Third Circuit have also rejected challenges to pandemic-related standing orders. *United States v. Howard*, No. 20-cr-53, 2021 U.S. Dist. LEXIS 81995, at *7 (M.D. Pa. Apr. 29, 2021) (Brann, J.).

### E. The Court Denies Plaintiffs' *Ex Parte* TRO

The Honorable Susan D. Wigenton, U.S.D.J., was the first judge to preside over this matter and rule on Plaintiffs' challenge to the vaccination-or-testing requirement. On July 21, 2022, the day after Plaintiffs filed their first complaint and TRO application, Judge Wigenton denied Plaintiffs' request for a TRO. ECF No. 3 at 4. The Court held that Plaintiffs did not "meet the minimum benchmark showing" for satisfying Local Civil Rule 65.1 or Rule 65 governing injunctions and found that "Plaintiffs did not provide any specific facts—let alone a clear and specific showing—[demonstrating] immediate and irreparable harm." *Id.* at 2-3. "In fact," the Court noted, Plaintiffs filed their TRO request "well over a month after the incident that gave rise to this action, which indicates that there is no such exigency" warranting a TRO. *Id.*

The Court also found no basis to grant a preliminary injunction. *See id.* at 3. The Court held that Plaintiffs' request "does not set forth any discernable arguments that justify—or even simply explain—a pressing need for a preliminary injunction." *Id.* "Plaintiffs' Motion is devoid of any analysis of the factors that this Court must consider when granting a preliminary injunction." *Id.* Specifically, the Court found that Plaintiffs' alleged harm was self-inflicted—and not irreparable— because "Mr. Berutti was afforded an alternative means of accomplishing his business with the Court but declined to accept the alternative." *See id.* at 4. On the merits, the Court noted that Plaintiffs failed to address the operative order concerning testing because Chief Judge Wolfson amended Standing Order 2021-08 in Standing Order 2022-01 to permit court entrants to "present proof of a negative result from *a rapid test*, rather than a PCR test, along with proof of identification." *Id.* at 3 (emphasis in original). Accordingly, the Court determined that "[t]his matter shall proceed in the normal course." *Id.* at 3.

### F. Plaintiffs' First Amended Complaint is Rendered Moot

In July 2022, Plaintiffs filed a first amended complaint ("FAC") and TRO application challenging the vaccination-or-testing requirement in Standing Orders 2021-08 and 2022-01. ECF Nos. 6-7. Plaintiffs' first amended complaint was effectively the same as their original complaint, except Plaintiffs alleged that the Court's additional option of a negative rapid test for COVID-19 was also unconstitutional. *See* FAC ¶¶ 31-33, 82-83, 87, ECF No. 6.

However, before the Court[30] could consider Plaintiffs' amended TRO application, Chief Judge Wolfson issued Standing Order 2022-02 on August 23, 2022, rescinding the vaccination-or-testing requirement from Standing Orders 2021-08 and 2021-01.[31] Plaintiffs agreed that the rescission of the vaccination-or-testing requirement "moot[ed] the exigent relief sought by Plaintiffs in their motion for a temporary restraining order . . . ." ECF No. 12. Nevertheless, Plaintiffs insisted on litigating their first amended complaint and requested a preliminary injunction.

### G. The Court Dismisses Plaintiffs' First Amended Complaint

On January 27, 2023, the Court granted the Federal Defendants' motion to dismiss and denied Plaintiffs' request for a preliminary injunction. ECF Nos. 28, 29. The Court also denied a motion for recusal filed by Plaintiffs, which alleged without evidence that the Court demonstrated "hostility toward the issues that Berutti brings before the Court" and "an unconstitutional potential for bias." Pls.' Recusal Br. at 1, ECF No. 21-1; *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *11 ("displeasure with [past] legal rulings does not form an adequate basis for recusal").

In dismissing Plaintiffs' first amended complaint, the Court limited its analysis to two jurisdictional issues. First, the Court held that the panoply of statutes cited by Plaintiffs—21 U.S.C. § 360bbb, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, 42 U.S.C. § 1985—could not be cobbled together to create jurisdiction, and

---

[30] On August 18, 2022, pursuant to 28 U.S.C. § 292(b), Chief Judge Chagares designated the Honorable Matthew W. Brann, Chief Judge of the United States District Court for the Middle District of Pennsylvania, to preside over this matter. ECF No. 8.

[31] https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2022-02COVIDProtocols.pdf.

Plaintiffs had no private cause of action under those statutes. *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *11-13. Second, Plaintiffs lacked standing because Mr. Berutti "fail[ed] to identify any harm he suffered" or "allege that his client in *Falcone* suffered any harm." *Id.* at *17. As the Court noted, "Without a harm, Berutti has no injury. Without an injury, he has no standing. Without standing, the Court does not have jurisdiction over his claims. Dismissal is accordingly appropriate." *Id.* at *17-18. The Court did not address the Federal Defendants' arguments that Plaintiffs' complaint was moot under Rule 12(b)(1) and Plaintiffs failed to state a claim upon which relief could be granted under Rule 12(b)(6).

### H. Plaintiffs' Second Amended Complaint

On January 30, 2023, Plaintiffs filed a second amended complaint challenging the vaccination-or-testing requirement, which former Chief Judge Wolfson rescinded on August 23, 2022. ECF No. 30.  This second amended complaint is in substance duplicative of Plaintiffs' prior complaint. However, this time Plaintiffs invoke 42 U.S.C. § 1983 as the means to bring three causes of action: (1) violations of the First Amendment; (2) violations of the Fifth Amendment; and (3) "Statute and Regulatory Violations." *See* ECF No. 30 at 18-23.[32] Plaintiffs have not refiled their request for

---

[32] It is well-established that 42 U.S.C. § 1983 claims are ordinarily not cognizable against federal officers. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 702-03 n.33 (1979); *Dist. of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). However, following a conference call with the Court and a subsequent meet and confer between the parties, the parties agree that Plaintiffs are effectively bringing claims for equitable and injunctive relief against the Federal Defendants in their official capacity. *See* SAC ¶ 12 (pleading "Honorable Jane Doe" as official-capacity successor defendant for Chief Judge Wolfson), ECF No. 30; *see also id.* at 18-23 (seeking equitable and injunctive relief against the Court but not money damages against the individual Federal Defendants); *see also Free Enter. Fund v. Public Co. Accounting Oversight*

preliminary injunctive relief, so Plaintiffs can only obtain equitable or injunctive relief through a final judgment.

The Federal Defendants now move for dismissal of Plaintiffs' second amended complaint under Rule 12(b)(1) and 12(b)(6).

## STANDARD OF REVIEW

### A.  Rule 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." *Doughty v. United States Postal Serv.*, 359 F. Supp. 2d 361, 364 (D.N.J. 2005) (quoting *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999)). The court may dismiss for lack of subject-matter jurisdiction at any time regardless of whether an answer to the complaint has been filed or the parties have conducted discovery. *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008).  The burden is generally on a plaintiff to establish the Court's jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

The Federal Defendants' motion to dismiss is a facial challenge to jurisdiction. "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citation and quotations omitted). In a facial challenge, the Court generally accepts as true the factual allegations in the complaint, but the Court may still consider

---

*Bd.*, 561 U.S. 477, 491 n.2 (2010); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-1232 (10th Cir. 2005) (discussing suits for injunctive relief against federal officials in their official capacity for alleged constitutional violations).  Plaintiffs are not seeking damages against the Federal Defendants in their individual capacity.

"public documents" and websites not subject to reasonable dispute. *See, e.g.*, *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016); *Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 1:17-CV-0723, 2018 U.S. Dist. LEXIS 26519, at *7 n.1 (M.D. Pa. Feb. 20, 2018).

## B. Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. The Court need not consider "legal conclusions." *Id.* at 678.

Furthermore, in conducting this plausibility analysis, the Court is not limited to the allegations in the complaint. The Court may take judicial notice of documents and records that are not reasonably subject to dispute, such as "documents that are explicitly relied upon in" (or integral to) the complaint, "even if the plaintiff fails to attach the document." *Perez v. Turner*, No. 11-6833 (RBK/AMD), 2013 U.S. Dist. LEXIS 88892, at *19 n.5 (D.N.J. June 25, 2013) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (reliance on integral documents does not convert a motion to dismiss "into one for summary judgment"). The Court may also consider

17

government records made publicly available on the Internet. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.6 (3d Cir. 2015).

## **LEGAL ARGUMENT**

## I. **THE COURT LACKS SUBJECT-MATTER JURISDICTION**

The Court lacks subject-matter jurisdiction because Plaintiffs' claims are moot, and Plaintiffs do not have standing.  "Standing and mootness are two distinct justiciability doctrines that limit [a court's] jurisdiction to cases and controversies in which a plaintiff has a concrete stake." *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475-76 (3d Cir. 2016). "Standing ensures that each plaintiff has the requisite personal interest at the commencement of the litigation, while mootness ensures that this interest continues throughout the duration of the case." *Id.* at 476. These doctrines exist because the judicial authority of federal courts is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. Each of these jurisdictional requirements is addressed further below.

### a. **Plaintiffs' Case is Moot Because of Standing Order 2022-02**

Plaintiffs' case is moot because Standing Order 2022-02 "rescinded" the vaccination-or-testing requirement on August 23, 2022. This requirement is the reason why this "action is brought," and it precipitated Mr. Berutti's alleged June 6, 2022 courthouse incident. SAC ¶¶ 1, 13-20. Now that Mr. Berutti is free to enter the District's courthouses regardless of his vaccination status or willingness to take a COVID-19 test, there is no live case or prospective controversy for this Court to decide. Indeed, when former Chief Judge Wolfson issued Standing Order 2022-02, Plaintiffs abandoned their effort to seek a TRO and conceded that the standing order

18

"moots the exigent relief sought by Plaintiffs in their motion for a temporary restraining order . . . ." ECF No. 12. Furthermore, Plaintiffs are not seeking compensatory damages. *See id.* at 18-23 (requested relief). The principal relief they seek is equitable and injunctive relief against the Federal Defendants in their official capacity for implementing the vaccination-or-testing requirement that is no longer in effect.  Thus, the Court should dismiss Plaintiffs' complaint as moot.

Lastly, the Court should reject Plaintiffs' suggestion that this matter is capable of repetition defeating mootness, which Plaintiffs implied in prior briefing. *See* Pls.' Br. at 19, ECF No. 26 ("Judge Wolfson has not abandoned the power she asserts to have with respect to promulgating an identical Standing Order."). The capable-of-repetition exception is "narrow and applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Cty. of Butler v. Governor of Pa.*, 8 F.4th 226, 231 (3d Cir. 2021) (cleaned up). "There must be more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability." *Id.*

While it is certainly true that New Jersey could experience another wave of the pandemic premised on a new and virulent strain of the coronavirus, neither the allegations in the complaint nor the publicly available documents cited by the Federal Defendants suggest that Plaintiffs cannot establish a reasonable expectation or a demonstrated probability that the prior circumstances that brought about this

lawsuit will repeat. For Plaintiffs to suggest otherwise is mere speculation, which is underscored by the President's February 14, 2023 announcement that he "anticipate[s] terminating the national emergency concerning the COVID-19 pandemic on May 11, 2023." 88 Fed. Reg. at 9385. Thus, Plaintiffs cannot avoid dismissal based on mootness.

### b. Plaintiffs Lack Standing

Plaintiffs cannot establish any of the elements for constitutional standing. To establish constitutional standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). A plaintiff has the burden of demonstrating these requirements at the "commencement of the litigation," and must do so "separately for each form of relief sought." *Id.* at 170, 184-85. As part of this analysis, a court must separate a "generalized interest of all citizens in constitutional governance" from a "true stake in the controversy." *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982). "A particularized injury must affect the plaintiff in a personal and individual way; it cannot be a common grievance shared by all." *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *16-17 (quotations omitted). And even when constitutional injuries are alleged, "the Supreme Court has long rejected allegations of offense, fear, and stigma as sufficient to establish standing." *City of Ocala v. Rojas*, No. 22-278, 2023 U.S. LEXIS

1105, at *8-9 (Sup. Ct. Mar. 6, 2023) (Thomas, J., dissenting from denial of certiorari) (cleaned up).

As an initial matter, Plaintiffs clarified in briefing on the Federal Defendants' prior motion to dismiss that their clients did not suffer any injury from the vaccination-or-testing requirement, including in the *Falcone* case. "The injury which is the subject of the Amended Complaint is that which occurred to Mr. Berutti and MNB, ***not their client***. . . ." *See* Pls.' Br. at 22-24, ECF No. 26 (emphasis added). Likewise, in dismissing Plaintiffs' prior complaint, the Court held that Plaintiffs' clients suffered no injury. *See Berutti*, 2023 U.S. Dist. LEXIS 14131, at *16-18. Those facts remain unchanged in the second amended complaint.

Additionally, Mr. Berutti suffered no harm. As the Court noted in dismissing the first amended complaint, Mr. Berutti does not allege "any sort of physical, economic, or even reputational harm from being denied entry to the courthouse . . . ." *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *17; *see* SAC ¶¶ 17-23; FAC ¶¶ 13-20. "There was no gun-to-the-head, needle-to-the-shoulder, or swab-to-the-nostril moment." *See Finkbeiner v. Geisinger Clinic*, No. 21-cv-01903, 2022 U.S. Dist. LEXIS 154512, at *16 (W.D. Pa. Aug. 26, 2022) (dismissing vaccination-or-testing claims against private employer). Mr. Berutti also "does not allege, for example, that being denied entry caused him to lose business or suffer embarrassment." *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *17. "Nor does he allege that he lost business or revenue from being forced to reschedule the oral argument." *Id.*; *see* SAC ¶¶ 17-23; FAC ¶¶ 13-20. Those facts also remain unchanged in the second amended complaint. Accordingly,

Plaintiffs cannot establish that they were harmed. Indeed, the opposition may be true, as Mr. Berutti has promoted this lawsuit on state-wide talk radio, along with other pandemic-related litigation that he is pursuing through his law firm.[33]

Rather, Mr. Berutti's alleged injury in the second amended complaint is a "common grievance." *See Berutti*, 2023 U.S. Dist. LEXIS 14131, at *15-16. It is apparent that Mr. Berutti disagrees with the country's pandemic management. *See* SAC ¶¶ 57-95. He also believes that the "so-called" COVID-19 vaccines are ineffective and deadly. *See id.* In fact, Mr. Berutti cites evidence he believes suggests that the vaccines have killed "*more than double that of the Afghanistan/Iraq wars . . . .*" *Id.* ¶ 89 (emphasis in original); *see also id.* ¶ 90. But no matter the veracity of these beliefs, Mr. Berutti does not allege that the vaccines caused harm to him, his family, his law partners, his clients, or his business. It is not even clear that Mr. Berutti is vaccinated. *See id.* ¶ 18. And absent such harm, Mr. Berutti cannot use Chief Judge Wolfson's vaccination-or-testing requirement as a procedural instrument to litigate his COVID-19 beliefs in federal court.

Lastly, to the extent Mr. Berutti suffered any harm from the standing orders— which he did not—that alleged harm was "self-inflicted," which deprives the Court of standing. Court security gave Mr. Berutti the choice to present proof of full vaccination *or* a negative COVID-19 test. Chief Judge Wolfson did not "tacitly seek[] to coerce" Mr. Berutti to be vaccinated. SAC ¶ 7. But Mr. Berutti decided that he

---

[33] *In the News*, https://murray-nolanberutti.com/audio-of-ron-berutti-on-101-5-with-bill-spadea-on-july-28-2022/ (last visited Mar. 31, 2023).

disliked both options and assumed that he was entitled to constitutionally "shield" himself from a COVID-19 test. That assumption was incorrect. The "Constitution does not shield us from all things we dislike." *See Oberheim v. Bason*, 565 F. Supp. 3d 607, 610-11 (M.D. Pa. 2021) (rejecting COVID-19 masking challenge) (Brann, C.J.). And the Constitution does not afford standing to plaintiffs that self-inflict their alleged harms. *See Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."); *Campeau v. SSA*, 575 Fed. Appx. 35, 38 (3d Cir. 2014) (noting that "purely voluntary decision" did not afford "standing to seek damages under this statute because this self-inflicted injury is not fairly traceable to the Government's purported activities") (cleaned up); *see also Smith v. Biden*, No. 21-cv-19457, 2021 U.S. Dist. LEXIS 215437, at *24-25 (D.N.J. Nov. 8, 2021) (discussing how "a choice" undermined the plaintiffs' allegations of irreparable harm stemming from federal employee vaccine mandate), *appeal filed*, No. 21-3091 (Nov. 10, 2021). Thus, Plaintiffs lack standing, and the Court should dismiss the complaint.

### c. The Court Lacks Jurisdiction Over Plaintiffs' Claim for "Statute and Regulatory Violations"

The third count of the second amended complaint—for "statute and regulatory violations"—is a repeat of Plaintiffs' prior claim alleging violations of under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb. *See* SAC ¶¶ 114-17; *compare See* FAC ¶¶ 2, 108. Plaintiffs allege in both of their last complaints that they "were injured by virtue of Judge Wolfson's perpetuation of a Standing Order that

violated plaintiffs' rights to refuse an [Emergency Use Product]." SAC ¶ 117; *see* FAC ¶ 2 ("since all available so-called COVID-19 vaccines are Emergency Use Authorized," "no person can be coerced to take such vaccines" through a standing order).[34]

As the Court noted, however, it is "well settled 'that the FDCA creates no private right of action.'" *Berutti*, 2023 U.S. Dist. LEXIS 14131, at *12 (quoting *In re Orthop. Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999)); *see also* 21 U.S.C. § 337; *see, e.g.*, *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1177 (S.D. Fla. 2021) ("[T]o the extent Plaintiffs assert their rights under the FDCA through the Declaratory Judgment Act [challenging a school mask mandate because of COVID-19], the Court is without jurisdiction to hear such a claim").

Contrary to Plaintiffs' suggestion, there is nothing unusual or undemocratic about a statute lacking a private cause of action. *See* Pls.' Br. at 25-26, ECF No. 26. It is a basic tenet of our constitutional design that Congress "prescribes the rules by which the duties and rights of every citizen are to be regulated." The Federalist No. 78 at 490 (Hamilton) (Wright ed. 2004). Those rules can (and often do) limit or strip lower courts' jurisdiction in a variety of contexts.[35] Congress is also empowered to delegate regulatory enforcement or exclusive jurisdiction to administrative agencies

---

[34] Plaintiffs cite 21 U.S.C. § 300bbb and 45 C.F.R. § 45.116(b)(8). *See* SAC ¶¶ 4, 15. But it appears they meant to cite 21 U.S.C. § 360bbb and 45 C.F.R. § 46.116(b)(8).
[35] *See, e.g.*, Little Tucker Act, 28 U.S.C. § 1346(a)(2) (limiting district court jurisdiction to hear government contract claims); Federal Tort Claims Act, 28 U.S.C. § 2680 (creating jurisdictional exceptions to the waiver of the United States' sovereign immunity for tort liability); Anti-Injunction Act, 26 U.S.C. § 7421(a) (prohibiting suits seeking to restrain "the assessment or collection of any tax"); 15 U.S.C. § 634(b)(1) (precluding the issuance "attachment, injunction, garnishment, or other similar process, mesne or final" against the Small Business Administration).

without creating a private cause of action.[36] In other words, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider" and "when Congress strips federal courts of jurisdiction, it exercises a valid legislative power no less than when it lays taxes, coins money, declares war, or invokes any other power that the Constitution grants it." *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (plurality) (quotations omitted). Thus, the Court should dismiss Plaintiffs' claim for "statute and regulatory violations" for lack of subject-matter jurisdiction under Rule 12(b)(1).[37]

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if the Court finds that it has jurisdiction—which it should not—Plaintiffs do not state a claim upon which relief can be granted under the First Amendment or the Fifth Amendment. Each of these claims is addressed further below.

---

[36] *See, e.g.*, *Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95, 99 (2d Cir. 2020) (noting that the Fair Credit Reporting Act "does not provide a private cause of action for violations of Section 1681s-2(a)"); *Mazyck v. Wells Fargo Bank, N.A.*, No. 12-cv-3875, 2013 U.S. Dist. LEXIS 193108, at *4 (N.D. Ga. Jan. 29, 2013) (Protecting Tenants at Foreclosure Act "does not create a private right of action, and thus is not a basis for subject matter jurisdiction").

[37] Finally, Plaintiffs seem to suggest that because former Chief Judge Wolfson was an Article III judge, this Court's Article III jurisdiction is "implicated." *See* SAC ¶¶ 39-47. It is unclear what is meant by this "implication." But whatever it means, Plaintiffs cite no law for the implication, and the mere fact that Article III judges exercise judicial power in general through administrative standing orders is not a means to swallow up the limitations on jurisdiction prescribed by Congress. Additionally, to the extent the Court has jurisdiction over Plaintiffs' FDCA claims, which it does not, Plaintiffs fail to state a claim for relief because the vaccination-or-testing requirement did not infringe on Mr. Berutti's alleged "absolute right to refuse" the vaccine. *See* SAC ¶ 54. Mr. Berutti had the option to present proof of a negative COVID-19 test. Thus, the Court should dismiss Plaintiffs' claim for "statute or regulatory violations."

### a. Plaintiffs Do Not State a First Amendment Claim

Plaintiffs allege that they have "a First Amendment right under the United States Constitution, to a right of audience to stand and appear before the Court to argue and to be heard on behalf of [their] clients . . . ." SAC ¶ 99. Plaintiffs further clarified in prior briefing that this "right of audience" is not an "access-to-courts" claim requiring proof of harm to their clients, which Plaintiffs cannot show. Pls.' Br. at 33, ECF No. 26.[38] According to Plaintiffs, the "present case exclusively concerns a duly admitted attorney's right to stand and appear before a court on behalf of his or her client—a right known as the 'right of audience' which pre-dated the First Amendment itself." *Id.*

It is not clear whether any "right of audience" exists as a matter of constitutional law, let alone in this specific context.[39] Plaintiffs' source of this alleged right is the common law and a footnote in a dissent from an Oklahoma Supreme Court case. *See* SAC ¶¶ 103-105; Pls.' Order to Show Cause Br. at 25-26, ECF No. 7-1 (quoting *City Serv. Co. v. Gulf Oil Corp.*, 976 P.2d 545, 549 n.1 (Ok. 1999)). But even if a "right of audience" does exist, this alleged right would not give Mr. Berutti unqualified in-person access to the federal courts or the authority to ignore Chief

---

[38] To establish an access-to-courts claim, a plaintiff must demonstrate: "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[39] Outside the practice of law there is no unqualified "right of audience" under the First Amendment or any other constitutional provision. *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) ("alternative communication channels" to make speaker feel "seen and heard" deemed constitutional).

Judge Wolfson's vaccination-or-testing requirement. "The United States Constitution does not create a right to practice law." *See In re Roberts*, 682 F.2d 105, 108 n.3 (3d Cir. 1982); *Tolchin v. Supreme Court*, 111 F.3d 1099, 1115 (3d Cir. 1997) ("[T]he right to practice law is not a fundamental right for the purposes of the Equal Protection Clause.").

This Court's Local Civil Rules reflect the proper limitations on Plaintiffs' alleged "right of audience." For example, Local Civil Rule 101.1 prescribes the admission of New Jersey attorneys, appearances by patent attorneys and Assistant U.S. Attorneys, and *pro hac vice* admission. Likewise, Local Civil Rule 78.1 limits the ability of attorneys to make oral arguments before the Court. Under the Local Civil Rules, there is no unqualified right to practice before this Court.

Accordingly, even assuming some qualified "right of audience" exists, Chief Judge Wolfson's standing orders "comfortably clear[]" the "low bar" for constitutional scrutiny. *See Oberheim*, 565 F. Supp. 3d at 619 (citing *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973)). The standing orders are subject to rational basis review and "rationally further[] some legitimate, articulated . . . purpose." *Cf. id.* That is, the standing orders protect the "public health and safety" of Court personnel and visitors through "reasonable and prudent actions," while remaining committed to the Court's mission of rendering "sound administration of equal justice under law."[40] *Cf. Donohue v. Hochul*, No. 21-cv-8463, 2022 U.S. Dist. LEXIS 40138, at *22 (S.D.N.Y. Mar. 7, 2022) (dismissing plaintiff's claim that a

---

[40] https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2.pdf.

"mask mandate . . . interferes with Plaintiffs' right to freedom of association" because "any interference . . . would be de minimis"); *Casey v. Parker*, No. 20-cv-525, 2020 U.S. Dist. LEXIS 165665, at *8-9 (M.D. Tenn. Sept. 10, 2020) (noting the "minimal intrusion" of an involuntary temperature scan," which "is so clearly outweighed by the pressing need to control the spread of a deadly pandemic"). Thus, Plaintiffs fail to state a "right of audience" claim under the First Amendment, and the Court should dismiss Plaintiffs' claim under Rule 12(b)(6).

### b. Plaintiffs Do Not State a Fifth Amendment Claim

The second count of Plaintiffs complaint alleges a violation of the Equal Protection Clause of the Fifth Amendment. According to Plaintiffs, the vaccination-or-testing requirement "is arbitrary and does not serve a compelling governmental interest . . . since the actual physical illness of attorneys is not considered, even though the purportedly vaccinated may contract and spread [of the coronavirus]." SAC ¶ 111. Plaintiffs misstate the applicable standard, and their claim fails as a matter of law.

"As a general matter, economic and social legislation is subject to rational basis review, under which a law need only be rationally related to a legitimate state interest." *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (quotations omitted). Strict scrutiny only applies where "a classification that trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage." *Id.* (cleaned up).

Former Chief Judge Wolfson's vaccination-or-testing requirement is subject to rational basis review because it does not implicate a fundamental right or create

suspect classifications. As noted above, Plaintiffs' First Amendment "right of audience" is not implicated, there is no fundamental right to practice law, and there is no fundamental right against the minimal intrusion of a COVID-19 test to enter a federal courthouse to practice law.[41] And Plaintiffs cite none.

Former Chief Judge Wolfson's standing orders, including the vaccination-or-testing requirement, satisfy rational basis review because they protect the "public health and safety" of Court personnel.[42] Former Chief Judge Wolfson achieved this careful balance based on the latest guidance from scientific experts and narrowly tailoring the orders to the unique conditions in the District of New Jersey. This is evident from Standing Order 2022-02, which rescinded the vaccination-or-testing requirement based in part on new CDC guidance and changes in federal policy.

Chief Judge Wolfson's standing orders also satisfy rational basis review because they are well-grounded in her inherent authority to manage the federal courthouses, which is "essential to the administration of justice and absolutely essential for the functioning of the judiciary." *See Eash*, 757 F.2d at 563 (citation omitted). Accordingly, courts have rejected challenges to Chief Judge Wolfson's standing orders in the context of the Speedy Trial Act, finding that the standing orders were "well-supported" and "predicated on findings pertaining to 'real time'

---

[41] To the extent the Court considers the standing orders as imposing any sort of vaccine "mandate"—which it should not—the orders would still be subject to rational basis review. *See Children's Health Def., Inc. v. Rutgers, State Univ. of N.J.*, No. 21-15333, 2022 U.S. Dist. LEXIS 171798, at *20 (D.N.J. Sept. 22, 2022) (discussing *Jacobson v. Massachusetts*, 197 U.S. 12, 30-32 (1905)).

[42] *See, e.g.*, Standing Order 20-02, https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2.pdf.

public-health risks." *See Kaetz*, 2021 U.S. Dist. LEXIS 65591, at \*5-6. If Chief Judge Wolfson's standing orders can survive challenges in the context of a criminal defendant's Sixth Amendment right to a speedy trial, then these standing orders certainly withstand the less rigorous rational basis review applicable to Plaintiffs' alleged "right of audience" or right to practice law.

Plaintiffs' reliance on expert declarations regarding the effectiveness of vaccines and "natural immunity," which they incorporate into their complaint, is irrelevant. *See* ECF Nos. 1-2, 1-3; SAC ¶ 51 and n.1. "[T]he existence of some scientific debate surrounding the degree of immunity provided by vaccines and whether 'natural immunity' from prior COVID-19 infection provides comparable (or, as Plaintiffs assert, superior) protection from the virus" does not make Chief Judge Wolfson's standing orders "arbitrary or irrational." *See Troogstad v. Cty. of Chicago*, 576 F. Supp. 3d 578, 586 (N.D. Ill. 2021) (cleaned up), *aff'd sub nom*, *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022); *see also McArthur v. Brabrand*, No. 1:21-cv-1435, 2022 U.S. Dist. LEXIS 120266, at \*28 (E.D. Va. July 7, 2022) ("plaintiffs' argument that it was irrational to 'blindly adopt' CDC guidance during a pandemic is baseless") (cleaned up). Moreover, Plaintiffs' scientific evidence is a red herring because Mr. Berutti was not coerced to take the COVID-19 vaccine to obtain courthouse access. Mr. Berutti had the choice of presenting a negative COVID-19 test. Thus, the Court should dismiss Plaintiffs' equal protection claim under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' second amended complaint with prejudice.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:   /s/ John F. Basiak Jr.
      JOHN F. BASIAK JR.
      JOHN T. STINSON
      Assistant United States Attorneys
      *Attorneys for Federal Defendants*

Dated: April 10, 2023

31