## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD A. BERUTTI and MURRAY-NOLAN BERUTTI LLC, on their own behalves and on behalf of all other members admitted to the Bar of the United States District Court for the District of New Jersey, including those admitted pro hac vice,<br><br>      Plaintiffs,<br><br>  v.<br><br>The HONORABLE RENÉE MARIE BUMB, Chief United States District Judge of the District of New Jersey, in her judicial capacity, and MELISSA RHOADS, Acting Clerk of the United States District Court for the District of New Jersey,<br><br>      Defendants. | No. 2:22-CV-4661<br><br>(Chief Judge Brann)[*] |

## MEMORANDUM OPINION

### AUGUST 4, 2023

Federal jurisdiction can be an arcane and elusive concept. Both law students and attorneys who consider themselves experts struggle with its many nuances. This matter requires the Court to dive headfirst into several of those nuances, which include whether a private party can seek prospective injunctive relief in a *Bivens*

---

[*] The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.

action against a federal judge acting in her official capacity as a court administrator, and whether Federal Rule of Civil Procedure 83, the Rules Enabling Act, 28 U.S.C. § 2072, and Article III of the Constitution of the United States grant private individuals the right to sue courts for issuing allegedly illegal standing orders. The parties have thoughtfully briefed this matter and elaborated on their arguments during an in-person oral argument. But as will shortly become evident, the answer to all of those questions is no.

Plaintiff Ronald A. Berutti and his law firm, Murray-Nolan Berutti, LLC (collectively, "Berutti"), sue the Honorable Renée Marie Bumb and Melissa Rhoads, in their respective official capacities as Chief United States District Judge of the United States District Court for the District of New Jersey (the "District Court") and Clerk of the District Court. The basis for Berutti's lawsuit is the District Court's allegedly unconstitutional standing orders governing court procedures during the COVID-19 pandemic (the "Standing Orders"). Pursuant to the Standing Orders, Berutti was denied admission at a federal courthouse because he did not have a vaccination record or a negative COVID-19 test. Berutti argues that the Standing Orders violate his "right to audience"—which he contends is protected by the Constitution. Defendants move to dismiss Berutti's amended pleading for lack of subject matter jurisdiction, or alternatively, the failure to state a claim. The Court concludes that it doesn't have jurisdiction over Berutti's claims, and even if it did,

he fails to state viable claims. Accordingly, Defendant's motion will be granted, and Berutti's Second Amended Complaint ("SAC") dismissed with prejudice.

## I.    BACKGROUND

### A.    Underlying Facts[1]

In September 2021, the Honorable Freda L. Wolfson, then Chief Judge of District Court, issued Standing Order 2021-08, requiring individuals seeking entry into the District Court's courthouses to "provide acceptable proof of vaccination against COVID-19."[2] In March 2021, Chief Judge Wolfson issued Standing Order 2021-01, which allowed individuals to provide negative COVID rapid test to enter the District Court's courthouses.[3]

On June 6, 2022, Berutti was scheduled to appear for an in-person oral argument at the Clarkson S. Fisher Building and United States Courthouse in Trenton, New Jersey before the Honorable Peter G. Sheridan of the District Court in the matter of *Falcone v. Dickstein*.[4] United States Marshals "confronted" Berutti at the entrance to the courthouse, inquiring as to whether he had a vaccine card or

---

[1]    The facts of this matter are laid out in more detail in the Court's January 27, 2023 Memorandum Opinion granting Defendants' earlier motion to dismiss Berutti's First Amended Complaint ("FAC"). Doc. 28; *Berutti v. Wolfson*, 2023 WL 1071624, at *1-2 (D.N.J. Jan. 27, 2023).

[2]    *Id.* ¶ 33. Acceptable proof consisted of a physical or digital record of vaccination or proof of a negative PCR test. Standing Order 2021-08, Doc. 1-1.

[3]    Standing Order 2022-01 (March 16, 2022), *available at* https://www.njd.uscourts.gov/ sites/njd/files/SO2022-01.pdf.

[4]    SAC, Doc. 30 ¶ 17.

negative PCR test result.[5] He did not because he was unaware of the District Court's Standing Orders.[6]

Despite his apparent lack of COVID-19 symptoms, Berutti was instructed to wait in his vehicle for Judge Sheridan to call him.[7] Judge Sheridan called and asked if Berutti would be amenable to arguing the matter over the phone while his adversaries and Judge Sheridan were in the courtroom.[8] Berutti was not amenable to Judge Sheridan's proposed arrangement, maintaining that the Standing Orders "violated his constitutional and statutory rights."[9]

Judge Sheridan eventually rescheduled the hearing and heard the parties' arguments telephonically on a later date.[10] Berutti was not available on the rescheduled date, so his partner argued the case instead.[11] Ultimately, Judge Sheridan dismissed the complaint in *Falcone* for lack of standing.[12] In August 2022, Chief Judge Wolfson issued Standing Order 2022-02, which rescinded the vaccine-or-test requirement.[13]

---

[5]  *Id.* ¶¶ 18-19.
[6]  *Id.* ¶¶ 20-21.
[7]  *Id.* ¶ 22.
[8]  *Id.* ¶ 23.
[9]  *Id.* ¶ 24.
[10]  *Berutti*, 2023 WL 1071624, at *1 (citing Decl. of Ronald A. Berutti, Doc. 26-1 ¶¶ 1-5).
[11]  *Id.* (citing Berutti Decl., Doc. 26-1 ¶ 5)
[12]  *Falcone v. Dickstein*, 2022 WL 4082138, at *2-3 (D.N.J. Sept. 6, 2022).
[13]  Standing Order, 2022-02 (Aug. 23, 2022), *available at* https://www.njd.uscourts.gov/sites /njd/files/StandingOrder2022-02COVIDProtocols.pdf.

4

## B.     Procedural History

Berutti eventually filed this action against Chief Judge Wolfson and William Walsh, who then served as the Clerk of the District Court. Following the filing of Berutti's First Amended Complaint ("FAC"), the Honorable Michael A. Chagares, Chief Judge of the United States Court of Appeals for the Third Circuit, reassigned the matter to this Court and designated me to preside over this action pursuant to 28 U.S.C. § 292.[14] After the matter was reassigned, both Chief Judge Wolfson and Mr. Walsh retired from the judiciary. Pursuant to Federal Rule of Civil Procedure 25(d), the Honorable Renée Marie Bumb and Melissa Rhoads, who respectively succeeded Chief Judge Wolfson and Mr. Walsh, were automatically substituted as defendants.[15]

Following reassignment, Defendants moved to dismiss the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[16] Berutti then moved to recuse me from hearing this matter.[17] The Court granted Defendants' motion to dismiss for lack of subject matter jurisdiction and denied Berutti's motion to recuse.[18]

Three days later, Berutti filed the SAC, which is now the operative pleading before this Court.[19] In the SAC, Berutti alleges: (1) a *Bivens* action for violation of

---

[14]   Doc. 8.
[15]   *See* Feb. 13, 2023 Order, Doc. 33; March 23, 2023 Order, Doc. 35.
[16]   *Berutti*, 2023 WL 1071624 at *2.
[17]   *Id.*
[18]   Jan. 27, 2023 Order, Doc. 29.
[19]   SAC, Doc. 30.

his First Amendment "right to audience" (Count I); a *Bivens* action for violation of his Fifth Amendment right to due process (Count II); and an action for violation of Article III of the Constitution of the United States, section 360bbb-3 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and 45 C.F.R. § 45.116(b)(8) (Count III).[20]

Defendants move to dismiss the SAC on the same grounds they asserted in their first motion to dismiss: lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).[21] Defendants' motion is fully briefed, and the Court held an in-person oral argument on July 24, 2023. Defendants'

---

[20]  *Id.* ¶¶ 96-108 (Count I), 109-13 (Count II), 114-17 (Count III). The Court notes several corrections that do not appear in the filings in this matter. The SAC styles Counts I through III as 42 U.S.C. § 1983 actions. At a status conference, the parties consented to the Court considering Counts I and II *Bivens* actions rather than section 1983 actions. That is because section 1983 does not apply to federal actors; *Bivens* actions are the narrower "federal analog" to section 1983 claims against state actors that allow "victims of a constitutional violation by a federal [official] . . . to recover damages against the official in federal court despite the absence of any statue conferring such a right." *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). Berutti confirmed his consent to the Court's conversion of his causes of action at oral argument on July 24, 2023. *See* Oral Arg. Tr., Doc. 44 at 4:15-23. In addition, the SAC identifies Chief Judge Bumb as a defendant in her "judicial capacity." SAC, Doc. 39 at 1. At oral argument, Berutti confirmed that he means to sue Chief Judge Bumb in her official capacity as a public official charged with administering the District Court. See Oral Arg. Tr., Doc. 44 at 4:2-10. That also makes sense, as judicial immunity applies only to judicial acts, and the Court concludes that regulating the entry into federal courthouses in response to a public health emergency is an administrative act. *See Forrester v. White*, 484 U.S. 219, 227-29 (1988). Berutti also confirmed that he means to sue Ms. Rhoads only in her official capacity, despite the SAC's failure to identify either Ms. Rhoads' official or personal capacity. *See* FAC, Doc. 6 at 1 (no capacity identified); SAC, Doc. 30 at 1 (same); Opp., Doc. 39 (identifying Ms. Rhoads in her official capacity); MTD FAC Opp., Doc. 26 (failing to identify Mr. Walsh/Ms. Rhoads as a Defendant entirely). Lastly, Berutti clarified that the statute he alleges the Standing Order violated is 21 U.S.C. § 360bbb-3, which governs Emergency Use Authority of certain medications, not 21 U.S.C. § 300bbb, which doesn't exist in the United States Code. *See* SAC, Doc. 30 ¶¶ 4, 48-56, 115 (referring to the Emergency Use Authority of COVID-19 vaccines).

[21]  MTD, Doc. 36.

motion is now ripe for disposition. For the following reasons, Defendants' motion is granted in full and the SAC dismissed with prejudice.

## II.    LAW

### A.    Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may attack a federal court's subject matter jurisdiction at any time.[22] The best practice is to consider a Rule 12(b)(1) motion before any other issues as a successful Rule 12(b)(1) motion means that the court has no jurisdiction to hear the claim.[23] The burden is always on the party invoking federal jurisdiction.[24]

### B.    Rule 12(b)(6)

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[25] and *Ashcroft v. Iqbal*,[26] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27]

---

[22]  *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008).
[23]  *Scanlin v. Soldiers & Sailors Mem'l Hosp.*, 2007 WL 141014, at *2 (M.D. Pa. Jan. 17, 2007) (McClure, J.).
[24]  *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).
[25]  550 U.S. 544 (2007).
[26]  556 U.S. 662 (2009).
[27]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

Our Court of Appeals instructs that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[28]

## III.   ANALYSIS

Berutti suggests that "Defendants wish avoid the substantive issues of the SAC—issues which have never been decided by this Court."[29] The Court can't speak to Defendants' wishes but reminds Berutti that federal jurisdiction over his claims is a prerequisite to the Court's analysis of the "substantive issues" in his pleading, and that the burden to demonstrate federal jurisdiction is his, and his alone. The Court assesses each Count in the SAC in turn to determine whether it has jurisdiction over them and whether they plausibly state a claim. It determines that it does not have jurisdiction because Berutti still doesn't have standing and the laws he purports to bring this civil action under do not authorize him to do so. But even if the Court had jurisdiction, Berutti's claims fail on the merits because there is no right to audience

---

[28]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[29]   Opp., Doc. 39 at 14.

and the Standing Orders easily pass the tiered scrutiny analysis appropriate for constitutional violations.

## A.    Berutti Does Not Have Standing

"'To survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true."[30] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, [the Court] 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'"[31] Those allegations must establish that (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the defendants' conduct, (3) and is likely to be redressed by a favorable judicial determination.[32] "To allege injury in fact sufficiently, a plaintiff must claim 'that he or she suffered an invasion of a legally protected interest that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[33] Generally, someone who suffers the invasion of their legally protected interest suffers harm.

In its prior Memorandum Opinion, the Court concluded that Berutti lacked standing because he failed to allege that he suffered a harm flowing from his inability

---

[30]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[31]   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[32]   *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (quoting *Spokeo v. Robbins*, 578 U.S. 330, 337 (2016)).

[33]   *Cottrell*, 874 F.3d at 162-63 (quoting *Spokeo*, 578 U.S. at 339).

to enter the federal courthouse in Trenton and present his arguments in person, noting that he failed to allege "any sort of physical, economic, or even reputational harm from being denied entry to the courthouse and prevented from arguing in person."[34]

Berutti maintains that "the standing requirement does not require the sufferance of a physical injury, economic [injury], or reputational injury."[35] He also made clear that he's not asserting an injury that his client in *Falcone* suffered and isn't bringing an "access to courts claim."[36]  Instead, Berutti alleges that his injuries were the: (1) "loss of [his] First Amendment rights," and the (2) "violation of the equal protection of the laws."[37]

Berutti's claimed First Amendment injury is the violation of his "right to audience," which, as Berutti explains, traces back to the thirteenth-century reign of Edward I and protects English barristers'[38] right to "appear in court on another's

---

[34]  *See Berutti*, 2023 WL 1071624, at *6-7.

[35]  Opp., Doc. 39 at 20.

[36]  *Id.* ("The injury which is the subject of the SAC is not that of the [P]laintiffs' client, but rather, of the [P]laintiffs themselves."); *id.* at 25 ("Defendants misconstrue [Berutti's] First Amendment claim as an 'access to courts' claim, which it is not. Rather, such claim strictly relates to fundamental First Amendment protections afforded to attorneys who are admitted to the Bar." (citation omitted)).

[37]  *Id.* Berutti also claims he was injured because he was "subject to [the] allegedly illegal Standing Orders." *Id.* But the illegality of the Standing Orders is not an injury, it's the cause of Berutti's other injuries.

[38]  England's legal profession is bifurcated into two classes: barristers, who have "rights of appearance in the royal courts" and "solicitors" who are analogs of present-day attorneys but do not generally appear before English courts. *See Solina v. United States*, 709 F.2d 160, 166 (2d Cir. 1983). As far as the Court can tell, no United States jurisdiction observes the distinction between barristers and solicitors.

behalf."[39] As Berutti concedes, there is no authority indicating that the First Amendment protects his right to audience.[40] For standing purposes, the "invasion of a 'legally protected interest' does not hinge on whether the whether the conduct alleged to violate a statute does, as a matter of law, violate the statute."[41] Indeed, a plaintiff may have standing "even though [his asserted] interest would not be protected by the law."[42] But even though "standing in no way depends on the merits

---

[39]   Opp., Doc. at 26-27. The one authority Berutti cites that appears to explicitly support the recognition of the right to audience (albeit without reference to the First Amendment) is Oklahoma Supreme Court Justice Marian P. Opala's dissenting opinion in *Cities Service Co. v. Gulf Oil Corp.*, 976 P.2d 545 (Okla. 1999). In *Cities Service*, the court concluded that two attorneys lacked standing to challenge a trial judge's ruling limiting their participation in the trial after the judge concluded that they violated her orders on various motions *in limine*. *Id.* at 546-47. Notably, the trial judge did not impose monetary sanctions on the attorneys and did not hold them in contempt. *Id.* The attorneys argued they had standing to challenge the judge's ruling because it impaired their "legally protected interests in their professional reputations." *Id.* at 548. The court's majority disagreed, but Justice Opala argued in dissent that the attorneys had standing because they suffered *reputational* and *financial* injuries. *Id.* at 549 (explaining that "[a]ny significant disciplinary in-court restraint clearly (a) *impinges* on the lawyer's duty to deliver *untrammeled* and *independent* service of forensic representation and (b) *harms* the practitioner's standing both with the sanctioning court as well as with the client." (emphases added)). Berutti acknowledges that "it certainly would be damaging to an attorney and his law firm's reputation if he and other attorneys in that office that litigated cases for a living were not able to appear in court." Opp., Doc. 39 at 20. But as he disclaims any reputational or financial injury, *Cities Service* is of no help to his argument.

[40]   Opp., Doc. 39 at 28 ("While no binding authority exists either in favor of the right of audience or to the contrary, all known authority supports such right as being engrained into the First Amendment.").

[41]   *Cottrell*, 874 F.3d at 164; *accord Berutti*, 2023 WL 1071624, at *7 ("Although the Court has already concluded that Berutti has no legal basis for such a claim based on the statutes Berutti cites to, it presumes his legal claims valid for the purposes of the standing analysis.").

[42]   *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006) (cited in *Cottrell*, 874 F.3d at 164). Berutti presents an interesting standing problem. The "legally protected interest" he avers Defendants invaded exists under a right whose own existence is questionable, as Berutti concedes.

of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted."[43]

But the SAC still fails to adequately allege a harm that Berutti suffered. The Court will assume that Berutti had a "right" to appear before Judge Sheridan on June 6, 2022. If he was prevented from exercising this right, he may have an injury. But that's not what happened. Berutti wasn't prevented from appearing on June 6, 2022 because, in response to his inability to enter the courthouse, Judge Sheridan rescheduled the hearing to a later date.[44] Therefore, Berutti did not suffer a harm on June 6, 2022.

Likewise, Berutti fails to allege an equal protection injury arising out of the events of June 6, 2022. The Supreme Court has recognized that "the denial of equal treatment resulting from the imposition of the barrier" is sufficient for standing and "a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing."[45] But where the benefit is "merely 'illusory,'" losing the opportunity to pursue it cannot confer standing.[46]

---

[43] *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted); *see also* CHARLES ALAN RIGHT & ARTHUR R. MILLER, Injury in Fact, 13A FED. PRAC. & PROC. JURIS. § 3531.4 (3d ed.) ("The nature of First Amendment rights readily supports recognition of injury; the importance of these rights supports recognition of rather attenuated injury.").

[44] *Berutti*, 2023 WL 1071624, at *1 & n.12 (citing Berutti Decl., Doc. 26-1 ¶ 5).

[45] *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 667 (1993).

[46] *New Jersey Television Corp. v. FCC*, 393 F.3d 219, 221 (D.C. Cir. 2004) (quoting *Ranger Cellular v. FCC*, 348 F.3d 1044, 1050 (D.C. Cir. 2003)).

Here, Berutti argues that under the Standing Orders, he was denied the opportunity to enter the courthouse and deliver in-person oral advocacy while other attorneys who had vaccination records or negative PCR tests could enter the courthouse, even if they were in fact sick. But he wasn't denied that opportunity because, as discussed above, Judge Sheridan rescheduled the argument. In any event, the manner in which an attorney presents arguments to a court on a motion to dismiss is a procedural matter.[47] The Supreme Court has expressed doubt that an "entitlement to nothing but procedure" is insufficient to support standing.[48] Berutti argues that he was unable to obtain the benefits of in-person oral argument, which he asserts include "seeing the body language of one's adversaries, the witnesses, and the [j]udge."[49] But he doesn't allege that his inability to see Judge Sheridan or opposing counsel would have led to a different outcome or otherwise hurt his case or him.[50] The Court is doubtful that the inability to physically see the judge and one's

---

[47] *See FCC v. WJR*, 337 U.S. 265, 275-77 (1949) (explaining that the opportunity to orally argue a matter before a court is a matter of procedural due process and that whether to grant oral argument "varies from case to case in accordance with differing circumstances, as do other procedural regulations"); *see also United States v. One 1974 Porsche 911-S Vehicle Identification No. 9114102550*, 682 F.2d 283, 286 (1st Cir. 1982) ("There is no constitutional right to oral argument on a summary judgment motion." (citing *Spark v. Catholic Univ.*, 510 F.2d 1277, 1280 (D.C. Cir. 1975); *WJR*, 337 U.S. at 275-77)).

[48] *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 764 (2005) (citing *Lujan*, 504 U.S. 555).

[49] Opp., Doc. 39 at 29. Berutti also explains that "connecting with a jury entails seeing the jurors." *Id.* Were Berutti representing a criminal defendant in a criminal jury trial, other constitutional injuries and rights might be at stake. But the proceeding in *Falcone* was not a criminal jury trial.

[50] Had he done so, he might have standing. But, as noted above, Berutti has disclaimed any injury his client might have suffered for the purposes of this civil action.

13

adversaries during an in-person oral argument on a motion to dismiss is anything more than an illusory benefit.[51] Therefore, even if Berutti lost a procedural opportunity, that loss isn't enough to give him standing for his claims.

Berutti also fails to show a causal link between any harm he might have suffered as a result of the rescheduled hearing. He wasn't able to appear at the rescheduled hearing because of a conflict.[52] He doesn't say what the conflict was, but there's nothing to suggest that Berutti's scheduling conflict was Defendants' fault. As Defendants note, such an injury is self-inflicted and cannot serve as a basis for standing because it fails to satisfy standing's causality requirement.[53]

### B.   The Rules Enabling Act and Article III Do Not Grant Berutti Any Rights Or Authorize Him to Sue For Alleged Violations

In Count III Berutti alleges a violation of Federal Rule of Procedure 83 and the Rules Enabling Act, 28 U.S.C. § 2072, under the *Bivens* doctrine. Section 2072(a) authorizes the Supreme Court to "prescribe general rules of practice and

---

[51]   *Cf. Ranger Cellular*, 348 F.3d at 1050 (explaining that the opportunity to compete is an illusory benefit where the plaintiff cannot show that they would have been qualified to compete for the opportunity). Likewise, Berutti cannot show that anything he would have done at oral argument before Judge Sheridan would have changed the outcome of *Falcone*, which, perhaps ironically, was also dismissed because Berutti's client did not have standing to assert his claims that he was injured by the enforcement of a local school board's mask mandate. *See* 2022 WL 4082138, at *2.

[52]   *Berutti*, 2023 WL 1071624, at *1-2 (citing Berutti Decl., Doc. 26-1 ¶ 5).

[53]   *See* MTD Br., Doc. 36-1 (citing *Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."); *Campeau v. SSA*, 575 F App'x 35, 38 (3d Cir. 2014) (noting that "purely voluntary decision" did not afford "standing to seek damages under this statute because this self-inflicted injury is not fairly traceable to the Government's purported activities" (cleaned up)).

procedure and rules of evidence for cases in the United States district courts." But it limits the Supreme Court's rulemaking power by providing that its rules "shall not abridge, enlarge or modify any substantive right."[54] Rule 83, which was created pursuant to Rules Enabling Act, authorizes district courts to adopt local rules and standing orders governing the court's practice, but provides that local rules "must be consistent with—but not duplicate—federal statutes."

Berutti appears to argue that the Standing Orders, which were issued pursuant to Rule 83, violate section 2072 because they impair his statutory and regulatory rights under section 360bbb-3(e)(1)(A)(ii)(III) of the FDCA and 46 C.F.R. § 45.116(b)(8) to be free of discrimination based on his refusal to be vaccinated or take a COVID test.[55] But *Bivens*, the procedural vehicle Berutti seeks to use for Count III, allows individuals to seek redress for constitutional violations committed by individual defendants—not statutory violations allegedly committed by federal courts or agencies.[56]

---

[54]   28 U.S.C. § 2072(b).

[55]   *See* SAC, Doc. 30 ¶¶ 39-56. The statute and regulation Berutti cites apply only to federal agencies under the executive branch, not the judiciary. *See* 21 U.S.C. § 360bbb-3(e)(1)(A); 45 C.F.R. § 46.101. Furthermore, section 360bbb-3 only authorizes the Secretary of the United States Department of Health and Human Services to impose certain conditions on actors in the healthcare industry who administer EUA drugs. Berutti therefore argues that the Secretary cannot impose such regulations on the federal courts, as that would be a violation of the separation of powers. Accordingly, Berutti believes his only recourse is to sue the entire District Court because the Secretary cannot. *See* Oral Arg. Tr., Doc. 44 at 15:19-16:12, 27:10-29:23. He is incorrect. Congress routinely enacts laws that allow executive officers to sue in the name of United States but do not afford private individuals that same right. If Berutti disagrees with those laws as a matter of policy, his arguments are best directed to Congress.

[56]   In fact, as is discussed below, it doesn't allow private individuals to sue federal agencies or the United States at all.

Instead, Berutti counters by resorting to Article III itself, attempting to daisy-chain the three together by arguing that a violation of Rule 83 is a violation of section 2072 is a violation of Article III.[57] But even if such a legal theory were plausible, none of the three authorities he cites grant Berutti any personal rights; nor do they authorize him to bring a private civil action against anyone—much less against Defendants in their official capacities. Berutti seeks to use *Bivens* to pursue an alleged violation that is simply not his to pursue.[58]

As for Berutti's resort to *Bivens* and Article III, the Court rejects that argument as one without any basis in the law. No private individual holds a constitutional right under Article III that can be vindicated in a civil lawsuit. Berutti fails to identify any authority for such a novel proposition. And the Supreme Court has been increasingly

---

[57]  *See* Opp., Doc. 39 at 22 ("Defendants were judicial officers who promulgated and enforced the Standing Orders, which exceeded their authority under 28 U.S.C. § 2072 and [Rule] 83. . . . Having been derived from a [c]ongressional grant of authority to the [c]ourts so that the [c]ourts may properly exercise their Article III authority, the Federal Rules of Civil Procedure have the force of law and may not be disregarded." (internal quotation marks and citations omitted)); Oral Argument Tr., Doc. 44 at 25:8-26:6 ("Q. So what is the constitutional right at issue in Count III? Is it a personal constitutional right you claim to hold under Article III, or is it your due process rights under the Fifth Amendment, or is it another constitutional right that I've overlooked? A. The issue is that [Chief] Judge Wolfson exceeded her Article III powers." (cleaned up)), 26:7-18 ("Q. Mr. Berutti, could you explain how you have a right to action to seek relief for Chief Judge Bumb's alleged violation of [28 U.S.C. § 2072], which is to say are you asserting that section 2072 has a private right of action? A. I am not asserting that [section 2072] has a private right of action. I am asserting, however, that the violation of that statute constitutes a violation of an Article III power." (cleaned up)).

[58]  This argument is reminiscent of one Berutti made previously that the Court rejected. In its prior opinion, the Court granted Defendants' motion to dismiss Berutti's claims because the FDCA contains no private right of action, which deprives the Court of jurisdiction. *See Berutti*, 2023 WL 1071624, at *5. Section 2072 likewise contains no private right of action and Berutti doesn't contend that it does.

hesitant to extend *Bivens* to new contexts.[59] This Court predicts it would decline Berutti's invitation to extend it to this context based on its prior precedent holding that an individual cannot maintain a *Bivens* official-capacity claim. Dismissal is accordingly appropriate.[60]

### C.    There Is No "Right to Audience"

Defendants argue that there is no right to audience.[61] Berutti concedes that "no binding authority exists either in favor of the right [to] audience or to the contrary."[62]

---

[59]  *See, e.g., Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity. This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" (first quoting *Iqbal*, 556 U.S. at 675, then quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001))).

[60]  Defendants also argue that this matter is moot given that Chief Judge Wolfson rescinded the testing or vaccination requirement. MTD Br., Doc. 36-1 at 13. The Court acknowledges that developments since the last motion to dismiss have further decreased the likelihood that Defendants will again require individuals to present a vaccination record or a negative COVID test to enter courthouses. As each day goes by, statistics improve. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID DATA TRACKER, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *available at* https://covid.cdc.gov/covid-data-tracker (last visited June 16, 2023). But the likelihood that Defendants renew the testing or vaccination requirement is tied to the likelihood of another wave of a more virulent COVID variant—or some other global bio-catastrophe. As past events have indicated, the probability of a global pandemic is not a readily determinable figure. Berutti directs the Court's attention to the United States Department of Health and Human Services' extension of its declaration providing for certain liability immunities arising out of COVID countermeasures under the Public Readiness and Emergency Preparedness Act. *See* Doc. 42-1 at 1. In any event, while the Court is eternally hopeful, it cannot say with certainty that Defendants have met the "'heavy', even 'formidable,'" burden required to moot this case. *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) (quoting  Additionally, Defendants maintain that the Standing Orders were lawful, which marshals in favor of a ruling on the merits. *See DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 190 (2000)). As will become evident, the Court agrees with Defendants on the merits.

[61]  MTD Br., Doc. 36-1 at 26.

[62]  Opp., Doc. 39 at 28. Indeed, in discussing Berutti's argument, the Court joins Justice Opala by authoring the second opinion in all of American jurisprudence that references the right to audience.

But he asserts that "all known authority" supports the proposition that this Court should interpret the right of audience as part and parcel with the First Amendment or incorporate it into the First Amendment.[63]

The Court interprets the "known authority" to which Berutti refers as three authorities he cites to in support of his contention that the Court should recognize the English common law right to audience: (1) Oklahoma Supreme Court Justice Marian P. Opala's dissenting opinion in *Cities Service Co. v. Gulf Oil Corp.*, which the Court already discussed above[64]; (2) Justice William O. Douglas' concurring opinion in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v.*

---

[63]  *Id.* At oral argument, Berutti confirmed that he's not bringing a First Amendment claim for violation of his right to free speech. *See* Oral Arg. Tr., Doc. 44 at 24:1-8 ("Q. What I would like to know is if you are alleging a violation of your right to free speech. If you are, please direct my attention to the facts in the operative pleading, the [SAC] that supports a violation of your free speech rights. A. Your Honor, I have not raised a free speech claim. I have raised a right of audience claim, and I will acknowledge that. . . . Q. So you're not alleging a violation of your free speech rights. A. I am not—other than to the extent that the right of audience encompasses some type of free speech, I'm not raising it particularly." (cleaned up)). Any effort to amend Berutti's pleading to add a free speech claim is improper at this late juncture, as expressed above. Regardless, amendment would be futile. To the extent that Berutti raises a free speech claim, it fails because he has not alleged an injury for the same reasons cited above. To the extent that Berutti has standing to allege a violation of his free speech rights, the Court concludes that the Standing Orders are a reasonable time, place, and manner restriction because they are content neutral and serve the important public health interest in preventing the spread of disease. *See Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 192 (3d Cir. 2008) (describing the standard for free speech claims); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) (explaining that courthouses are nonpublic fora in which speech can be restricted as long as the restrictions are content neutral and reasonable); *Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003) (same).

[64]  976 P.2d 545, 546-47 (Okla. 1999). The Court discussed *Cities Service* above with respect to standing because that's what the case is about. It doesn't reference the First Amendment at all. And even if it did, the dissent of a sole justice of the Oklahoma Supreme Court does not bind this Court.

*Attorney General of Massachusetts* ("*Memoirs v. Massachusetts*")[65]; and (3) the majority opinion in *Alden v. Maine*[66].

In *Memoirs*, the Supreme Court of the United States reversed a state high court decision concluding that Fanny Hill, an erotic novel, was obscene.[67] The plurality held that the state court below erroneously interpreted the Supreme Court's decision *Roth v. United States* by concluding that Fanny Hill was obscene despite also finding that the novel had some literary value.[68]

Justice Douglas authored a cogent concurring opinion challenging the principle that the First Amendment does not protect obscene conduct.[69] Responding to what he described as a "flood of letters" sent to his office urging him "to protect the community or the Nation by striking down [Fanny Hill]," Justice Douglas discussed the history of obscenity in English common law.[70] He explained that even if there was a strong common-law tradition criminalizing obscene literature, the First Amendment rejected that approach.[71] He then quoted this passage from an earlier

---

[65]   383 U.S. 413, 429-30 (1966).
[66]   527 U.S. 706, 733 (1999).
[67]   383 U.S. at 415-17. The novel at issue was Memoirs of a Woman of Pleasure, also commonly known as Fanny Hill. *Id.* at 415. Fanny Hill has been recognized as "the first original English prose pornography" and "is one of the most banned and prosecuted literary works in history, having been successfully prosecuted in England and the United States until 1963," when the Supreme Court decided *Memoirs*. RAY BROADUS BROWNE & PAT BROWNE, THE GUIDE TO UNITED STATES POPULAR CULTURE 273 (Popular Press 2001) (citing DAVID FAIRWEATHER FOXON, LIBERTINE LITERATURE IN ENGLAND 1660-1745, 45 (Univ. Books 1965)).
[68]   *See id.* at 418-20.
[69]   383 U.S. at 427-28 (Douglas, J., concurring).
[70]   *Id.* at 427-29.
[71]   *See id.* at 429.

Supreme Court opinion, which is the same passage Berutti now suggests supports

his argument that the Court should recognize the English right to audience:

> [T]o assume that English common law in this field became ours is to
> deny the generally accepted historical belief that "one of the objects of
> the Revolution was to get rid of the English common law on liberty of
> speech an[d] of the press."
>
> More specifically, it is to forget the environment in which the First
> Amendment was ratified. In presenting the proposals which were later
> embodied in the Bill of Rights, James Madison, the leader in the
> preparation of the First Amendment, said: "Although I know whenever
> the great rights, the trial by jury, freedom of the press, or liberty of
> conscience, come in question in that body (Parliament), the invasion of
> them is resisted by able advocates, yet their Magna Charta does not
> contain any one provision for the security of those rights, respecting
> which the people of America are most alarmed. The freedom of the
> press and rights of conscience, those choicest privileges of the people,
> are unguarded in the British Constitution."[72]

In *Alden*, the Supreme Court held that Congress could not use its Article I

powers to "subject nonconsenting states to private suits for damages in states

courts."[73] In doing so, the majority criticized the dissent's argument that state

sovereign immunity must derive from either common law, which is subject to

change by legislative action, or from natural law, which cannot overcome the

sovereignty of the federal government.[74] In its critique, the majority offered the

following, which Berutti now asserts supports his position:

> The text and the structure of the Constitution protect various rights and
> principles. Many of these, such as the right to trial by jury and the

---

[72] *Id.* at 429-30 (quoting *Bridges v. State of California*, 314 U.S. 252, 264 (1941)) (citations
omitted) (quoted in Opp., Doc. 39 at 26).

[73] 527 U.S. at 712.

[74] *Id.* at 733.

prohibition on unreasonable searches and seizures, derive from the common law. The common-law lineage of these rights does not mean they are defeasible by statute or remain mere common-law rights, however. They are, rather, constitutional rights, and form the fundamental law of the land.[75]

Berutti explains that the passage quoted from *Memoirs* indicates our Founding Fathers' interest in "preserving our basic freedoms against government interference with the ratification of the First Amendment."[76] He argues that the passage quoted from *Alden* "expanded on the concept of the Bill of Rights ensuring preservation of English common law freedoms."[77] He is mistaken on both counts.

The Court interprets the quoted passage from Justice Douglas' concurrence in *Memoirs* to stand for the proposition that the Constitution supplanted the common law rather than incorporating it.[78] As for the passage from *Alden*, the Court reads it to indicate that even though some constitutional rights had common-law progenitors, they became fundamentally different rights once included in the Constitution.[79] Neither *Alden* nor Justice Douglas' concurring opinion in *Memoirs* indicate that

---

[75]  *Id.*

[76]  Opp., Doc. 39 at 25.

[77]  *Id.* at 26.

[78]  In *Bridges*, the case Justice Douglas quoted from in *Memoirs*, the Supreme Court reversed a lower decision affirming certain individuals' contempt convictions for publishing comments about ongoing litigation. *See* 314 U.S. at 258. The Supreme Court recognized a long-held common-law tradition of punishing individuals for statements about ongoing litigation but concluded that the First Amendment displaced that tradition and protected such statements, subject to specific exemptions not relevant here. *See id* at 263-67.

[79]  The *Alden* majority went on to say that "[a]lthough the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design." 527 U.S. at 712.

courts should recognize fundamental rights that predated the constitution but were not recognized in it.[80] In sum, none of the authority Berutti cites supports his argument that the First Amendment protects an attorney's so-called right to audience. To the extent Berutti invites this Court to infer the existence of a constitutional "right to audience," the Court declines. Accordingly, Berutti fails to state a violation of the First Amendment as a matter of law.

### D.   *Bivens* Does Not Authorize Berutti to Sue Defendants in their Official Capacities

Berutti styles all of his claims as *Bivens* claims. *Bivens* provides a limited remedy for individuals seeking "damages and injunctive relief against federal officials for violating an individual's federal constitutional rights."[81] "However, Bivens only authorizes suit against federal officials in their individual capacities, not the United States and federal agencies."[82] And "[a]n action against government officials in their official capacities," such as this one, "constitutes an action against

---

[80]   The Court accordingly rejects Berutti's reliance on *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *See* Opp., Doc. 39 at 28. Although both of those decisions implicate history and tradition into the constitutional analysis, they do so for rights that predated the constitution *and were included in it*, unlike the right to audience.

[81]   *Warren v. United States*, 279 F. App'x 162, 163 (3d Cir. 2008) (citing *Bivens*, 403 U.S. at 388).

[82]   *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 483 (1994).

the United States."[83] Accordingly, Berutti has no right to sue Defendants in their official capacities and his claims must be dismissed.[84]

### E.    The Standing Orders Have a Rational Basis[85]

Lastly, the Court turns to the merits of Berutti's equal protection claim. Berutti argues that the Standing Orders burden his fundamental right to audience, and therefore strict scrutiny applies.[86] Defendants respond that rational basis review applies because there is no right to audience.[87] The Court has already rejected the right to audience. Accordingly, the proper analysis is rational basis review. Under that standard, the Standing Orders are valid if they "rationally further[] a legitimate

---

[83]   *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (per curiam) (citing *Meyer*, 510 U.S. at 471).

[84]   As expressed above, at oral argument, Berutti confirmed that he initially filed this action against Defendants in their official capacities. *See* Oral Arg. Tr. Doc. 44, at 4:2-14 ("Q. Mr. Berutti, are you suing Chief Judge Bumb in her official capacity, judicial capacity, or both? A. In her official capacity, which is a judicial capacity, is my understanding, not a personal capacity, no. Q. So, you're suing in an official capacity and a judicial capacity? A. Yes. Q. All right. Are you suing Ms. Rhoads in her official capacity or her personal capacity? A. In her official capacity." (cleaned up)). He later made an oral motion to amend his pleading to "include [claims against Chief Judge Wolfson] in her personal capacity if that would be necessary to keep this case alive." *Id.* at 4:24-5:2. The Court denies Berutti's oral motion because it is procedurally improper, *see* Fed. R. Civ. P. 15(a) (explaining the requirements to amend one's pleading prior to trial), and in any event, futile. Berutti's attempt to amend his claims comes far too late in this litigation. Moreover, there are no facts in the SAC suggesting that either Chief Judge Wolfson or Mr. Walsh ever personally violated Berutti's rights. Any actions they took were taken in the course of their roles as official administrators of the District Court.

[85]   Again, this analysis assumes that Berutti has standing to bring his claims and that the Court has jurisdiction over them.

[86]   Opp., Doc. 39 at 31; *see Connelly v. Steel Valley Sch. Dist.*, 706 F.3d at 213.

[87]   MTD Br., Doc. 36-1 at 28-29.

state purpose or interest."[88] Rational basis review "is not a license . . . to judge the wisdom, fairness, or logic of legislative choices."[89]

Berutti—in a somewhat circular fashion—first argues that the Standing Orders do not survive rational basis review because they are unconstitutional.[90] That fails to move the mark. But he also offers a wealth of evidence suggesting that COVID vaccines and tests are ineffective at best, and unsafe at worst. The SAC contains thirty-eight paragraphs to that effect.[91] In addition, attached to Berutti's original pleading are two declarations: one from a physician and another from a biochemist. Both lodge numerous attacks at the efficacy of vaccines and cite various scientific studies and authorities.[92] Berutti cites other scientific evidence throughout his pleadings.[93] He contends that it's irrational to allow vaccinated attorneys who may still be infected and contagious to enter courthouses while barring healthy unvaccinated attorneys.[94]

Although this Court disagrees with Berutti as to the vaccines' efficacy and safety, the Court's opinion is irrelevant—as is Berutti's. This Court's role is not to question the wisdom of policies adopted by administrators whether it agrees with

---

[88] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 55 (1973) (citing *McGinnis v. Royster*, 410 U.S. 263, 270 (1973)).

[89] *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

[90] Oral Arg. Tr., Doc. 44 at 19:13-18 ("Well, it can't possibly be a rational basis to impose an illegal and unconstitutional mandate on somebody. That's irrational, definitionally.").

[91] SAC, Doc. 30 ¶¶ 57-95.

[92] *See* Decl. of Dominic M. Pedulla, M.D., Doc. 1-3; Decl. of Michael Babich, Ph.D., Doc. 1-3.

[93] *See, e.g.*, Doc. 1-10 (identifying "selected adverse events reported after COVID-19 vaccinations").

[94] Opp., Doc. 39 at 33.

them or not. As long as there is a rational relationship between the means and the ends, the policy is valid. That's the case whether the administrators in question are responding to trivial matters or global disasters. No matter how much scientific evidence Berutti adduces in favor of his position, Defendants' decisions "may be based on rational speculation unsupported by evidence or empirical data" and still pass muster.[95]

Here, the Court finds that there is a rational relationship between a COVID vaccine-or-test requirement for in-person proceedings.[96] At most, Berutti has shown that there is some scientific disagreement regarding the vaccines and tests. Chief Judge Wolfson was well within her rights to choose the pro-vaccine side of that debate rather than the anti. If Berutti wishes to further regulate the federal courts' ability to govern their practices, he can take his arguments to Congress, which has plenary authority to regulate the district courts to allow unvaccinated individuals entry during global pandemics. Until it does, Berutti must adhere to the District Court's orders.

## IV.    CONCLUSION

---

[95]  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993).

[96]  A common thread that runs through Berutti's arguments is that Defendants attempted to force him to obtain a vaccine. That is a flawed interpretation of the facts at best and a disingenuous interpretation at worst. The Standing Orders required a vaccination record or test result to be physically present in the courthouse but provided for several mechanisms to otherwise continue proceedings, such as the use of virtual appearances, drop boxes for documents, and continuances where necessary. Similarly, Berutti's argument that the Standing Orders improperly modified conditions for admission to the District Court is unfounded.

The courts are not the forum for disagreeing with policy-based decisions, even when those decisions are made by judges in their limited capacities as court administrators. It is clear from the Standing Orders themselves that Chief Judge Wolfson undertook a complex balancing of several factors, turning to guidance from both federal and state authorities, to determine the best course forward during an uncertain time. This Court cannot and will not second-guess her decision. Defendants' motion is granted, and Berutti's SAC dismissed with prejudice.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge for
the Middle District of Pennsylvania
(sitting by designation)